## Little v. Commonwealth.

(Decided May 26, 1925.)

### Appeal from Pike Circuit Court.

1. Homicide—Evidence Held Sufficient to Go to Jury.—In homicide prosecution, evidence held sufficient to go to jury.

2. Homicide—Proper to Give Instructions on Whole Law of Case where Evidence Circumstantial, Including Self-Defense and Manslaughter.—In homicide prosecution, when evidence is purely circumstantial, unless there are facts negativing a combat, it is proper practice to give whole law of case in instructions, including manslaughter and self-defense.

3. Homicide—Evidence Held to Warrant Instruction on Manslaughter.—In homicide prosecution, evidence held to warrant submission of issue of manslaughter, based on killing done during mutual combat and sudden heat of passion.

4. Homicide—Failure to Submit Issue of Killing by Defendant in Defense of his Son-in-Law Held Prejudicial Error.—In homicide prosecution, where defendant's son-in-law testified that he alone killed deceased while acting in self-defense, but circumstances warranted inference that defendant was present and participated in killing while acting in sudden heat of passion, and an instruction on manslaughter based thereon had been given, held that, since if defendant shot deceased for protection of his son-in-law, he would be entitled to instruction on self-defense, failure to submit such issue to the jury was prejudicial error.

5. Homicide—Testimony of Threats Held Not Incompetent as Indefinite and too Remote.—Where, about a year previous to homicide, deceased had taken a gun from defendant's son and destroyed it, causing ill feeling between defendant and deceased, evidence as to threats made by defendant against a man that had broken a gun "for some of his folks," which continued through period of several months to within 30 days of homicide, was admissible as against objection that they were indefinite and too remote.

6. Homicide—Statements Made by Deceased in Extremis and Aware of Impending Death Properly Admitted as Dying Declarations.—

Statements made by deceased at time he was in extremis and aware of impending death were properly admitted as dying declarations.

7. Witnesses—Either Side May Cross-Examine Adverse Witness on Question of Dying Declarations.—In homicide prosecution, it was competent for either defendant or state to cross-examine an adverse witness on subject of dying declarations of deceased.

8. Criminal Law—Commonwealth Attorney, Officer of Court, Required to Conduct Himself with Due Regard to Proprieties of Office.—The Commonwealth attorney is an officer of the court, and though it is his duty to prosecute those charged with crime, he should be fair with defendant and conduct himself with due regard to properties of his office.

ROSCOE VANOVER for appellant.

FRANK E. DAUGHERTY, Attorney General, and GARDNER K. BYERS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—
Reversing.

Alse Little and Coleman Osborne were indicted in the Pike circuit court charged with the murder of Sim Childers. In a separate trial Little was convicted of manslaughter and his punishment fixed at fifteen years in the penitentiary.

Childers was deputy sheriff of Pike county. About a year before the homicide he had taken a gun from the son of Alse Little and destroyed it. Alse was much irritated and demanded $50.00 in payment. This being refused he indulged in numerous threats of violence against Childers; undertook to assault him with a gun on one occasion and exhibited violent ill-will repeatedly for several months. This passed off without injury to either party and for a period of a month or more before the homicide they had resumed social relations, and were apparently friendly, at least there were no expressions of ill-will on the part of either.

A few days before the homicide Little was in Childers' store and put on a pair of cheap gloves which Childers had been using, saying that he was going to keep them, and did so, but no other words were uttered and no irritation was manifested by either, and Little testified that this was a playful act on his part.

On the afternoon of the homicide Little rode behind Osborne on the latter's horse from his house to Osborne's home; Childers rode along the same route about thirty

minutes thereafter and was shot and fatally wounded at a point in the public highway about 150 feet from Osborne's home.

According to the Commonwealth's evidence a brother of the deceased arrived a few minutes after the shooting and found deceased sitting in the road badly wounded. Little was present with a loaded pistol in his hand. Witness examined it and the chambers were filled with loaded cartridges. There had been a slight snow at the time and the tracks of a man led from the road to and around a beech tree thirty-eight feet from the road, and on the far side of this tree there were indications of a person having lain down or reclined. It does not appear whether these tracks corresponded to the shape and size of Little's shoe.

There were mule tracks on the side of the road at a point opposite the tree. They did not continue further on that side of the road but reappeared on the opposite side about ten feet distant, indicating that the mule had jumped across the road. There were also indications that the rider had fallen at that place.

No one else was present and the witness and Little assisted the wounded man to the home of Coleman Osborne where he died within about thirty minutes thereafter. There were three wounds upon the body, two in front and one in the back of the neck. The entrance to the rear wound was larger than those of the wounds in front.

Coleman Osborne owned a 38 calibre special pistol, while that of Little was a 32-20. There was some evidence that the two defendants had had trouble prior thereto and that Little had said that he would not make up with Osborne unless he killed Sid Childers, and an inference is drawn from this that the meeting between them was arranged for that purpose.

On the other hand Little testified that while he and deceased had been unfriendly and admits some of the threats proven by the Commonwealth, he denies many of them and states that he and deceased had become reconciled, and that they had been on good terms for several months before the homicide. He denies that there was ever any real trouble between him and his son-in-law, or that he made the statement that he would not get friendly with him unless he killed Sid Childers, or anything of the sort. His son-in-law had been summoned as a witness before the grand jury and at his

request he (defendant) went to his home to stay with his wife and children during his absence. Upon arriving he went into the house and was nursing his grandchild when he heard the shots and started out and met Raymond Osborne who told him what had occurred; he also met his son-in-law who explained the rencounter. The wounded man had relatives living near and he advised his son-in-law to leave, but himself went to the spot and took Childers' head upon his shoulder and was thus supporting him when the brother of the latter arrived. He knew nothing of the tracks. The two assisted Childers to the house and he proposed to go for a doctor; some one else telephoned and he remained with the wounded man until his death. The latter told his wife and brother in the presence of witness and Gracie Osborne "that Coleman Osborne killed him, do not blame Alse Little for this, it was Coleman Osborne and no one else." He did not participate in the shooting and denies any complicity therein or any knowledge of it until informed by Coleman Osborne.

Coleman Osborne corroborated the evidence of defendant as to what occurred when they were together, and stated that after their return he was called to the gate by the mail carrier who wanted him to haul a load of coal. After some minutes' conversation the mail carrier passed on and he talked a moment to his little brother who was cutting wood. Deceased rode up and called him out and said, " 'I heard that you are going before the grand jury,' and I said, 'Yes, I will have to go,' and he said, 'No G—— d—— you, you are not going,' and I said, 'Sid, you are drinking, just go on up the road,' and he said, No G—— d—— you, you are not going before the grand jury,' and went after his gun and I grabbed mine and shot him." That he fired one shot, and after an interval the other two in quick succession; Little was not present, took no part in the difficulty and there was no concert of action between them. After the shooting he went to the house and on the porch met Little coming out and told him what he had done and Little advised him to leave, which he did.

Raymond Osborne, the eleven-year-old brother of Coleman, corroborated him as to what occurred at the time of the shooting. Gracie Osborne, wife of Coleman, testifies that her father was in the house nursing her child at the time the shots were fired and corroborated him as to the dying declaration of the deceased.

Several witnesses, including the mail carrier, heard the shots fired; no one detected any difference in the sound. One witness about three hundred yards away testified that just after the shots were fired she saw a man go up to the Osborne residence and another come out and she recognized the latter to be Alse Little. Also several witnesses who heard the shots saw the smoke arise, and none of them were able to locate any smoke around the beech tree above mentioned.

The Commonwealth's witnesses deny defendant's version of the dying declaration, and testify that the wounded man said that Coleman Osborne shot him, but that every time he undertook to say anything more that Alse Little would interrupt and tell him not to talk further.

On this appeal it is earnestly insisted that there is no evidence tending to prove defendant's guilt, and that the trial court should have given a peremptory instruction to find him not guilty. It may be said, however, that the ill-will borne by defendant against the deceased, manifested by numerous threats and acts continuing up to a short time before the homicide; his proximity at the time of its commission; his presence at the scene of the homicide in company with the dying man with a loaded pistol in his hand; the tracks leading around the beech tree and the evidence of the different sizes of bullet wounds, and the fact that he and Osborne possessed different caliber pistols at that time, and the further fact that Osborne claims to have done all of the shooting with one pistol furnished evidence upon which to authorize a submission of the case to the jury.

It is next urged that the circumstances and threats relied upon by the Commonwealth indicated previous malice and a lying in wait for deceased; that mutual combat and sudden heat and passion are negatived by these facts and that on this evidence, if guilty at all, defendant is guilty of the crime of murder; that, therefore, it was error to give a manslaughter instruction.

When the evidence is purely circumstantial, unless there are facts negativing a combat, it is proper practice to give the whole law of the case in the instructions, including manslaughter and self-defense.

In this case there was an eye-witness as to the facts introduced by the defendant, but it is unnecessary to determine whether this in itself would take the case out of the rule stated, for the reason that the jury were not

required to believe that the accused made the tracks around the tree, or that he was lying in wait for the deceased.

The circumstances that the deceased was shot both in front and back; that the wounds appear to have been made with weapons of different caliber, and that Osborne had only one pistol, indicate that two men other than the deceased were present and taking part in the difficulty, and the jury may have believed this, although Osborne testifies to the contrary, as they were authorized to reconcile all the facts and circumstances, and accept such as they believed to be true.

If such was the case and the facts otherwise were as detailed by Osborne, the accused, if present and participating, could have acted in sudden heat and passion, and under this view of the case it was proper to submit that issue to the jury. It must not be overlooked, however, that Osborne claims to have acted in self-defense, and if on trial would be entitled to an instruction of that character. And if under such circumstances the accused shot the deceased for the protection of his son-in-law he would have been entitled to the same instruction and the court should have also submitted this defense to the jury. This was not done and constitutes prejudicial error, and for this reason the case must be reversed.

As a new trial will result it is proper to notice other objections that may arise therein. It is urged that the evidence as to threats is incompetent as being indefinite and too remote. This objection is untenable.

The evidence as to threats made by the accused against the deceased began immediately after the gun episode and continued through a period of several months up to within thirty days of the homicide. Certainly this is not too remote. The witnesses, T. B. Carlton and Monroe Hall, did not testify that accused called deceased's name, but they do detail threats made by him against a man that had broken a gun "for some of his folks" which in the light of the other circumstances in the case, clearly identifies the party to whom he referred.

The deceased was in *in extremis* at the time he was carried to the home of Coleman Osborne. The circumstances as well as his condition and conduct indicates that he was aware of impending dissolution. The court,

therefore, properly permitted his statement at that time to be introduced in evidence as a dying declaration.

It was also competent for either side to cross-examine the adverse witness on this subject. It is also urged that the Commonwealth's attorney was guilty of misconduct in repeatedly asking incompetent questions to which the court sustained objections. The record shows ground for this complaint.

The Commonwealth attorney is an officer of the court, and while it is his duty to prosecute those charged with crime, he should be fair with the defendant and conduct himself with due regard to the proprieties of his office. This will not occur in another trial.

Upon another trial the same instructions will be given with the addition of a self-defense instruction in the usual form.

Wherefore, the case is reversed and cause remanded for proceedings consistent with this opinion.