## Buster v. Commonwealth.

(Decided Dec. 6, 1932.)

E. BERTRAM, J. A. FLOWERS and R. E. LLOYD for appellant. BAILEY P. WOOTTON, Attorney General, and FRANCIS M. BURKE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE WILLIS—Reversing.

Jim Buster, Willie Westmoreland, Hershel Savage, and Henry Glover were jointly indicted for the murder of Alex Beatty. The indictment was in six counts, charging the defendants jointly with the commission of the crime, and then charging each of them separately as principal with the other defendants as aiders and abettors. A conspiracy among the several defendants to bring about the death of Alex Beatty was also charged. A severance was demanded, Buster alone was tried, and he was condemned to serve a life sentence in the penitentiary. He has prosecuted an appeal.

The commonwealth introduced evidence tending to show that Buster had killed Alex Beatty in the night, and had reported the fact to the family of the deceased, stating that he had to do it. Beatty had been working for a neighbor named Lonzo Brown. Brown testified that he had overheard a conversation between Buster and Beatty refering to a barrel. It seemed that Buster had lent a barrel to Beatty and desired its return. Buster had failed to find the barrel at the place suggested, and asked Beatty if he knew anything about the barrel. Buster was heard to say he. did not care to cause any trouble about it, but he wanted to know where

it was. Apparently Buster later discovered the barrel, which Beatty was using to make liquor. Beatty had promised Buster, if he did not locate the barrel, to get him another one. There was an intimation that Buster objected to the use made of the barrel, and possibly an implication that Beatty's business might be exposed. Beatty had married a sister of Buster, and testimony was admitted tending to show improper relations between Mrs. Beatty and Henry Glover, who was one of the men jointly indicted with Buster. Some statements of the several codefendants were admitted, but there was a failure to show that a conspiracy existed, and the court gave the jury this admonition:

> "The Court allowed certain testimony to go to the jury with regard to certain declarations, statements, and conversations of Henry Glover, Willie Westmoreland, and Hershel Savage, and also certain movements and acts of the aforesaid, not in the presence of the defendant, James Buster, and prior to the killing of Alex Beatty, and also the relations of Henry Glover with the wife of Alex Beatty, prior to the killing; the jury is instructed that they will not consider the same against the defendant Buster, but will consider such only in so far that it may show the interest (or) bias of said parties as witnesses in the case, if it does show same."

The witnesses to the tragedy all agree that Beatty, Westmoreland, and Savage came to Buster's home and called him out of bed. The purpose is not clearly disclosed by the record, but the parties appeared to be friendly, and drank up the supply of liquor which Beatty had on hand. They then went to a place near the residence of Savage for a new supply. They spent several hours in conversation and drinking, and during the time Glover joined the party. A fight almost developed between Westmoreland and Savage, when some harsh words were spoken, but Buster was able to quiet them. Later in the night, Beatty, who was obviously under the influence of intoxicants, raised an argument with Buster about the barrel, accused him of meddling in his business, and went so far at last as to attack him with a knife. It was then that Buster shot him five times, all the bullets entering the body of Beatty at about the same point. The testimony tended to show that Beatty was a small sickly man with a crippled

hand, and probably not equal to a fight with Buster. But all the witnesses state that Beatty had a knife in his hand and was attempting and threatening to use it on Buster. The son of Beatty found the knife clasped in the dead man's hand.

It is insisted that the court erred in admitting for any purpose the evidence respecting the relations of Glover with Mrs. Beatty, that the declarations of the codefendants were incompetent, and that the verdict of the jury is flagrantly against the evidence.

It is difficult to see how the relations of Glover and Mrs. Beatty could be relevant on the trial of Buster. It did not conduce to show any motive for Buster inflicting an injury on Beatty, or to explain the altercation between them. Although the court withdrew the evidence from the jury in part, it still permitted it to remain as affecting the credibility of the witnesses. Glover was a witness for Buster, and was present when the killing occurred. Thus the commonwealth was permitted to impeach him indirectly and improperly by proof of specific acts of immorality. See the Civil Code of Practice, sec. 597, which is applied in criminal cases. Farmer v. Com., 91 S. W. 682, 28 Ky. Law Rep. 1168; Posey v. Com., 194 Ky. 483, 240 S. W. 91; Warrix v. Com., 195 Ky. 795, 243 S. W. 1025; Bentley v. Com., 200 Ky. 246, 254 S. W. 752; Miller v. Com., 236 Ky. 448, 33 S. W. (2d) 590.

The evidence was not admissible, and, under the circumstances, it was prejudicial to Buster. The statements of appellant's codefendants were not competent against him, in the absence of proof of a conspiracy. Crenshaw v. Com., 227 Ky. 223, 12 S. W. (2d) 336.

The case is one where all the eyewitnesses agree as to what occurred. It is plain that Beatty cherished some grievance against Buster over the transaction about the barrel. Brooding over the supposition that he might be exposed, Beatty insisted on talking to Buster about it, and finally assumed a threatening attitude, culminating in an attack with a knife. He refused to stop upon Buster's demand, and the shooting followed. The witnesses agree that Buster backed away from Beatty, but Beatty pursued him and declared that he would cut his head off. It was under such circumstances that Buster shot him. Nothing appears in the record to impugn the verity of Buster's testimony. He

is corroborated by every person present on the occasion. The persons present were not Buster's particular friends, but, with the exception of Glover, all of them had come there with Beatty. Glover came later and joined the party at the invitation of Beatty, who introduced him to Savage as an old friend. None of the other persons present participated in the altercation, or did anything about it.

The commonwealth is not confined to the witnesses present when a killing occurs, but may show by circumstances, contradictions, or other matters of probative force that the accused is guilty as charged. But no facts appear in this record upon which the testimony of the witnesses can be brushed aside. The circumstances are consistent with what the eyewitnesses relate. The external facts tended to corroborate the story of those who saw the shooting. The commonwealth has suggested that it was dark and the witnesses could not see Beatty's knife. The decedent's son testified that he found the knife in his father's hand after he was dead. The witnesses heard it click as it was drawn to assault Buster, and Beatty threatened to cut off his head. The cut on Beatty's head and the slight bruise on his neck may have been sustained in falling against the fence after he was shot. It is not shown when the cut or bruise originated, or how either was caused, but it appears that Beatty fell against some fence bars. Beatty had a crippled hand, but he was able to work, and could use tools and weapons. It was not impossible or unreasonable to believe that he could make an assault in the manner detailed. Undoubtedly, Beatty was drunk at the time of the homicide, and but for his drinking no trouble would have occurred. No sufficient provocation for the assault was shown. It was a rash act that must have sprung from a mind maddened with strong drink. Certainly Buster had a right to defend himself from such an assault.

Under all the circumstances, we conclude that the verdict is flagrantly against the evidence and cannot be sustained. Haynes v. Commonwealth, 225 Ky. 234, 8 S. W. (2d) 403.

Judgment reversed for a new trial not inconsistent with this opinion.