## Morgan v. Commonwealth.

(Decided Feb. 8, 1935.)

692

W. H. LEWIS and WILLIAM LEWIS for appellant.

BAILEY P. WOOTTON, Attorney General, and RAY· L. MUR-
PHY, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Reversing.

George Morgan, appellant, and wife, Emma Morgan, were jointly indicted by the Leslie county grand jury on March 25, 1934, on a charge of murder. Morgan was charged with having fired the shot which killed Dorothy Dixon, and his wife as having been accessory. They were tried together and were found guilty of voluntary manslaughter, and punishment was fixed at confinement in the penitentiary for thirteen years.

A motion for new trial was sustained as to Emma Morgan, but overruled as to George Morgan. Judgment was entered upon the verdict, and George Morgan appeals. A discussion of the errors claimed to have been committed on the trial requires a brief statement of the facts.

George Morgan and wife, with three or four children, lived on one side of and close by Middle Fork river, near the mouth of Short creek. Joe Dixon with his wife, Laura, and several children lived on the opposite side of the river, about 150 or 200 yards below the Morgan home. It is apparent from the evidence that prior to the killing of Dorothy Dixon, the eight year old daughter of Joe and Laura Dixon, the two families had been on unfriendly terms. On the day Dorothy was killed, her father with several of his boys went over on the Morgan side of the river. The boys had been getting bait and it was their intention to set out a trot line. While there a controversy arose between Joe Dixon and Laura Morgan. A good deal of abusive and insulting language was used and it is claimed that Dixon had whipped one of Morgan's boys; it

was also claimed that Dixon was threatening to shoot Mrs. Morgan. However, before Morgan appeared on the scene, Joe, saying he did not want trouble with the Morgans, waded back to his side of the river. But the passage of words continued and Mrs. Morgan, claiming she feared serious results, went toward her home calling for her husband, who was in the garden.

The commonwealth's witnesses, chiefly members of the Dixon family, claim that as George Morgan arrived on the scene his wife handed him a pistol which she was carrying concealed under her apron; that Morgan stepped back a short distance, placed the pistol in the forks of a locust tree and fired one shot, and then ran back toward his house. The shot thus fired, as claimed, missed Joe Dixon and struck the little girl, who was a few feet away from her father. She was shot in the abdomen and lived about two months after the 19th of August, 1932, the day of the shooting. The proof showed that she died as a result of the bullet wound. It is claimed by the Dixons that at the time of the shooting they were doing nothing at all which would justify Morgan in firing the shot at Dixon.

On the other hand, the proof for the appellant is that Joe Dixon had been very abusive to Emma Morgan directly before the fatal shot; that Joe had whipped one of his boys; that after his wife called out to him and he appeared on the scene he found Dixon still cursing her, flourishing a pistol, and threatening to kill her. He says that he shot at Joe in order to keep him from killing his wife, and that he did not see the girl at the time. The evidence is conflicting, the members of the respective families not agreeing as to what happened just prior to and at the time of the shooting. There is some testimony that Emma Morgan, prior to the firing of the shot by her husband, sent one of her children to the store for cartridges, and that after he had shot at Dixon she urged him to kill all of them.

Cook Morgan, who says he was related to both George and Emma Morgan, testified for the commonwealth. He says he was on the side of the river where Joe Dixon and his wife and children were at the time the shot was fired, and says that Joe and Emma were indulging in some very uncomplimentary remarks about each other; that Joe said he did not want any trouble and came back on his side of the river. He did not see

the pistol fired, but heard the report. He said he could not see the little girl at the time of the shot, but heard her cry out and went to her and gave first aid.

Appellant contends that the court erred in overruling his motion to have the jury sent to the scene of the shooting for a view of the premises and surroundings. He insists that the court abused his discretion in so refusing, because of the sharp conflict in the testimony of the various witnesses; the witnesses for the commonwealth contending that Morgan placed the pistol in the forks of a locust tree and fired the shot; Morgan and his witnesses asserting the contrary.

Counsel contends that while there was a locust tree near where Morgan was standing when he fired the shot, it had no fork in it, and also insists that none of the Dixon family could see Morgan or the tree at the time the shot was fired. As Morgan insists he fired at Dixon in order to protect his wife from what he believed was impending danger, the jury by its visit to the scene would have been enlightened only on the subject as to whether the tree was forked, and as to whether the witnesses could or not see Morgan when the shot was fired. At the most the evidence to be cleared up was not substantive in its nature. It would have served only to contradict the evidence of Laura Dixon and some of her children, and it appears from the record that several witnesses for the defendant testified as to the tree and the surroundings, and also directly on the possibility or impossibility of clear vision. Since this state of record is shown, it cannot be said that the court abused a sound discretion in not directing the jury to view the premises, and unless it can be demonstrated that such discretion was or has been abused, the court will not look upon his ruling as constituting error. Cr. Code Prac. sec. 236; Young v. Com., 141 Ky. 708, 133 S. W. 791; Nash v. Searcy, 256 Ky. 234, 75 S. W. (2d) 1052, and cases cited therein.

It is contended that the defendant was not present during a part of the time while the trial was being conducted. Appellant and another filed affidavits to the effect that he was in jail during a part of the time the jury was being selected. This is shown solely and alone by affidavits filed in support of motion for a new trial. There was no objection prior to the motion for a new trial. The court had no opportunity to rule on

the objection until the case was closed and motion for a new trial was filed. There was no showing made of this procedeure in the bill of exceptions. Under our repeated rulings, in such a condition of the record, the court cannot review. Dorroh v. Com., 236 Ky. 68, 32 S. W. (2d) 550; McGeorge v. Com., 234 Ky. 189, 27 S. W. (2d) 967. However, since the case must be reversed on another ground, and it is hardly conceivable that there should be a like occurrence on another trial, a discussion of the above objection will not be carried further.

Complaint is made in regard to the admssion of alleged incompetent testimony and rejection of incompetent testimony. In so far as these contentions merit cosideration they will be noted.

The commonwealth in rebuttal called Tommie Mosley, who said he heard the sound of the pistol fired by Morgan, and that soon thereafter Bertie Morgan, one of George's boys, came up to Charles Morgan's store and called for some cartridges. Whether this was properly introduced as rebuttal testimony or not, need not be discussed, for since the calling for cartridges took place after the shooting the testimony served no purpose toward throwing any light on the question of guilt or innocence of Morgan, and though its admission may not be considered as prejudicially erroneous, it should be elminated on another trial, particularly since it appears that immediately after the shooting Morgan ran from the scene and the Dixons went to their home.

Counsel for appellant complains that the court erred in excluding from the jury certain testimony of Bob Begley, who was introduced for defendant and undertook to describe the premises where the killing occurred, and with which he showed familiarity, and particularly because the court refused to permit Begley to testify that one standing in the front yard of the Dixons could not see the locust tree from the forks of which it is claimed Morgan fired his pistol. We find no such state of record. The witness testified on this point, and on cross-examination the witness was asked:

"Did you go up there about the 18th or 19th of August and get in Joe Dixon's yard and in front of the house and look down the river there and see where you say, and see people there at this ford there?"

To this question the witness replied:

"No, I didn't go there."

Whereupon over objection the court said:

"Gentlemen of the jury, the statement of Bob Begley about standing in Joe Dixon's yard and seeing down to the ford, that part of the evidence will not be considered."

We do not consider that the court's admonition took from the jury any testimony of the witness relating to the matter of his seeing certain objects, such as the locust tree, or any other particularly mentioned objects. Therefore we see no error in the court's ruling on this point, though if the testimony on the next trial be the same, or similar, the court should confine the testimony to the ability of a person to see such objects as are in controversy by the proof, and not permit it to take as wide a range as to one's ability to see the ford generally. What is said in regard to Begley's testimony will apply to other witnesses testifying on the same features.

Cook Morgan, recalled by the commonwealth, was asked if a few days after the trouble he had not refused to talk to one of the attorneys for appellant, and he admitted that he had so refused, because there were people standing around and that Emma Morgan was there and he did not want all of them to know what he knew about the case. The defense then took him on cross-examination, and in undertaking to show his reluctance to testifying asked him if he had not made a proposition to the Morgans that if he could obtain some money he would leave and not present himself to testify. He answered, "Yes, sir, they did." He afterwards admitted that it was neither George nor Emma Morgan with whom he had the conversation, but some other persons by the name of Morgan. No knowledge of these proposals or conversations seem to have been traced to George and Emma Morgan, or either of them. The defendant moved to exclude all testimony with regard to conversations relating to payment of Cook Morgan for his departure or refusal to testify. The court did admonish the jury not to consider the evidence of Cook Morgan as to offers of money, "for any purpose," but then added:

"The only purpose in allowing that evidence to be

received,—that is to permit the witness to explain why he refused to talk to L. D. Lewis, and if it throws any light on that you may consider it for that purpose only."

Since the question of whether the witness talked or refused to talk to an attorney was not an issue, the court should have eliminated the above-quoted part of his admonition.

However, the court did commit an error which affected the rights of the appellant prejudicially. The court should not have included in the instructions any reference to the careless and reckless use or handling of deadly weapon. The law, in the form it was given, is correctly stated; but since the witnesses for the commonwealth nearly all with one accord testified that Morgan deliberately placed the pistol in the forks of a tree and fired at Joe Dixon, and Morgan himself unequivocally testified that he shot directly at Joe Dixon trying to kill him, there was no testimony on which to base the instruction with regard to the reckless use of a firearm. If Morgan deliberately and intentionally shot at Dixon and missed him, but killed the little girl, he would be guilty of murder if the jury believed beyond a reasonable doubt that it was done in malice; guilty of manslaughter if done in sudden heat and passion; and if the jury believed it was done in his own or another's defense, he was not guilty, although he killed the little girl. Since it is clear that there was seemingly no intention to kill the child, the fact that the jury was instructed on reckless use of arms would have a tendency to confuse the jury, and to submit an issue not warranted by the facts. The court held in the case of Morgan v. Com., 242 Ky. 116, 45 S. W. (2d) 850, 851:

"Ordinarily, and in the general run of cases, the rights of a defendant in a criminal prosecution are completely protected by the giving of general instructions under a plea of not guilty, and that is universally so where defendant denies the facts constituting the offense with which he is charged. But where he admits such facts, and then interposes a legal excuse therefor having legal effect to exonerate him from criminal intent, his excuse should be submitted to the jury in concrete form."

See, also, Gibson v. Com., 204 Ky. 748, 265 S. W. 339.

698

The court concludes that no reference to the reckless use of firearms should have been embodied in the instructions, and on another trial any reference to such reckless use should be eliminated. Because of the error pointed out above, the judgment of the lower court is reversed and cause remanded for a new trial consistent herewith.

Judgment reversed.