## Benge v. Commonwealth.

(Decided May 1, 1936.)

C. R. LUKER for appellant.

BEVERLY M. VINCENT, Attorney General, and W. OWEN KELLER, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Affirming.

About 8:30 p. m. on Saturday, July 13, 1935, James Bowling was shot and instantly killed. An indictment was duly returned charging Gordon Benge, Veltie Benge, and Newt Benge with his murder. They sought separate trials (section 237, Criminal Code of Practice), and the commonwealth elected to put Newt Benge upon trial. He was found guilty of manslaughter and his punishment fixed at ten years' imprisonment.

## The Facts.

Newt Benge is a man thirty-seven years of age with a wife and several children, and the slain man was twenty-six years of age and had a wife and family.

These parties were neighbors, they had been friends, and for some years the slain man had lived on a farm belonging to the defendant, Gordon Benge. While it is not well brought out in the evidence, there is enough to show the relations between the slain man and the Benges had recently become unfriendly.

The deceased and the Benges on the fatal night attended a Holiness meeting at the home of Henry Benge, an uncle of the accused men. There is some evidence Bowling was drinking, while the testimony of others is that he was duly sober. There is no evidence of any drinking on the part of the Benges. None of these entered the house where the religious services were in progress or took any part therein, except Bowling at one time called out, "Amen"; but the evidence indicates this was not prompted by reverence but by braggadocio. A brawl and scuffle soon started between Newt Benge and Bowling, during which a pistol fired and Bowling fell dead. Gordon Benge and Veltie Benge rushed to their brother, the appellant, and learning he was uninjured, the three defendants left at once, and went, not to their respective homes, but to the home of their father, where they remained together until they were arrested on the following Monday evening. They made no effort to aid the wounded man or to ascertain the gravity of his wound and did not attend the funeral.

Bowling's body was picked up and placed on the porch. No weapon of any kind was found where he fell or in his clothing when that was examined. He had been shot but once. The ball entered his right

·cheek, passed through but not out of his head, and was found protruding from near the top of his head. Upon pressure it sank down into his skull. His cheek was powder burned. The ball had ranged upward. It was a .32-caliber ball. Death came instantly.

There was quite a concourse of people present. Forty-two witnesses testify, yet all they can say is that there was a brawl and scuffle between Newt Benge and Bowling, a pistol fired, and Bowling fell. The only witness who attempts to say who shot Bowling is a twelve year old boy, Stanley Bowling, a first cousin to the Benges but not related to James Bowling, who testified he saw Gordon Benge (then standing eight or nine steps from Bowling) jerk his ·pistol, and he testifies, "I reckon Gordon Benge shot him."

### Defendant's Theory.

It is somewhat difficult to grasp just what the defendant's theory of this killing may be. He admits the brawl and scuffle with Bowling, the pistol shot, and that Bowling fell; but stoutly denies having a gun or shooting him himself and says he does not know who shot Bowling.

He testifies that in this scuffle Bowling drew a large blue automatic on him, that he knocked it up, and it fired. The defendant says fire flew all over him and blinded and deafened him and "liable as not it was the shot from tht pistol which killed Bowling." To lend an air of verisimilitude to this narrative, he introduces Clyde Hammonds, who testified he attended the meeting and had with him a .45-caliber automatic pistol, and that shortly before the shooting James Bowling and Hubert Bowling set upon him and James Bowling took his gun, and he testifies:

> ·"I tried to get it back and he said I was going to get it back and he said he was going to kill those three Benges."

He testifies this pistol then had six loads in it, and when Alfred Hammond returned it to him two days later, he got back four. Alfred Hammonds testifies, but he says nothing about this pistol. The commonwealth called Orien Crook, who testified he was with Clyde Hammonds when Bowling was killed and that

Hammonds then had this pistol and handed it to Crook, and he and Hammonds walked around to where Bowling was killed, and that when he (Crook) got ready to go home he returned this pistol to Hammonds. Hammonds was not recalled.

The defendant testified he did not know who shot Bowling, and had never been told Gordon Benge had done so.

The next witness for the defense was Veltie Benge, and he testified Gordon Benge had a .32-caliber special pistol and had it with him that night, and that when he saw it at his father's that one chamber was empty. Veltie testified he had a .32 special but did not have it with him. He testified that on that night at his father's he and Newt and Gordon were talking about the matter and Gordon said he had shot at Bowling.

### Is the Jury's Verdict Supported?

From the evidence just recounted, it is apparent that Veltie Benge and Newt Benge had given different accounts of what Newt Benge knew of the shooting of Bowling. The jury could not believe both accounts. It may have believed neither. There is some evidence that is undisputed. Bowling's face was powder burned. That shows he was shot from close range. He was shot by a .32-caliber pistol, which eliminates the theory he was killed by the automatic (the .45), and the bullet ranged upward, which would have been quite unlikely if he had been shot by any one standing eight or nine steps distant. The jury's verdict is amply sustained.

### Grounds for Reversal.

Martha May Brock testified she was talking to Gordon Benge shortly before the killing and that this occurred:

"When James Bowling got up there he said he thought James Bowling was going to have to join the church again and I asked him if he had been baptized and he said he didn't know."

She testified she saw the three Benges after that and before the shooting talking together. The court gave this admonition to the jury:

"Members of the jury, the statement made by this

witness as to what Gordon Benge said to her in the absence of this defendant on trial is not competent as against this defendant and you will not consider it as substantive testimony against him upon the trial of this case in any way or for any purpose unless you shall believe from the evidence, beyond a reasonable doubt, upon final submission to you of this case that there existed at the time a conspiracy between Gordon Benge and this defendant or this defendant and Gordon Benge and others.''

We are unable to see in this remark any importance. It appears to have been merely a jocular remark prompted by Bowling's apparent intoxication and amounted to nothing.

May Bowling was allowed to testify she saw the three accused Benges talking and one of them said: ''I will kill that goddamned son of a bitch if he comes up in the yard.'' The appellant's motion to exclude this evidence was overruled. The appellant cites several opinions of this court in support of his contention that this was error, and we shall now discuss them.

In Johnson v. Com., 9 Bush. (72 Ky.) 224, Levi Harrison testified to a similar remark, and this court reversed that judgment because Harrison was allowed to give his opinion about the matter as is shown by this taken from that opinion:

''The witness proceeded to state 'that he thought Ben was talking about Edwards because he had heard him and Jim talk about him before.' * * * It was unnecessary to include in the grounds filed for a new trial in the present case the error of the court below in admitting the opinions of the witness Harrison, and as this error appears in the record with an exception made, and is to the prejudice of the accused, the judgment of conviction is reversed.''

A similar general threat is found in the case of Jones v. Com., 191 Ky. 485, 231 S. W. 31, 35. In reversing that judgment after recounting a number of alleged errors we said:

"While, possibly, none of the errors hereinbefore recited, standing alone, would be sufficient to authorize a reversal of the judgment of conviction if defendant's guilt was clearly proven, we have often held that a number of them, each of which approaches close to the line of being sufficiently prejudicial, will combined authorize a reversal, unless guilt is convincingly established."

We reversed the judgment in Steele v. Com., 252 Ky. 730, 68 S. W. (2d) 6, for a similar reason.

Appellant cites the opinion in Hollingsworth v. Warnock, 112 Ky. 96, 65 S. W. 163, 164, 23 Ky. Law Rep. 1395, which was a civil action by Mrs. Hollingsworth against Warnock for killing her husband. This is copied from that opinion:

"Testimony was permitted to go to the jury of threats uttered by Ed Hollingsworth to the effect that he would kill somebody before morning, which did not appear to have been communicated to Warnock, and therefore could have had no influence in determining his action. * * * These threats seem too general in their nature to be admissible for any purpose."

From a careful reading of that opinion, we are persuaded the reversal was rested upon the erroneous instructions, and we do not feel that a reversal would have been ordered upon the error in the evidence if it had been alone.

In Com. v. Hoskins, 35 S. W. 284, 285, 18 Ky. Law Rep. 59, the defendant was allowed to show by W. A. Fur that the deceased had said:

"That he was going to the school election * * * and that, if things did not go his way, 'he would kill some son of a bitch.'"

This was held to be error, but we did not reverse the judgment because of it.

Another opinion he might have cited is Rooney v. Com., 193 Ky. 723, 237 S. W. 403, 405, in which witness had testified:

"Appellant told them he had been appointed a deputy sheriff and that he was a 'good old rounder

and never bothered anybody, but there were two or three guys he wanted to kill, and he would then be satisfied.' "

That opinion said of that:

"While we might not reverse the judgment on that account solely, on another trial it will be eliminated."

On the contrary, similar impersonal and general threats have been admitted as showing general malice in the following cases: Wood v. Com., 246 Ky. 829, 56 S. W. (2d) 556; Kelly v. Com., 237 Ky. 690, 36 S. W. (2d) 344; Evans v. Com., 230 Ky. 411, 19 S. W. (2d) 1091, 66 A. L. R. 360; Little v. Com., 209 Ky. 263, 272 S. W. 721; Wireman v. Com., 206 Ky. 828, 268 S. W. 586; Fugate v. Com., 202 Ky. 509, 260 S. W. 338, and Burns v. Com., 198 Ky. 319, 248 S. W. 848.

Such seems to be the general rule. See 30 C. J. p. 190, sec. 417.

Appellant complains that the commonwealth was allowed to impeach his witnesses upon several collateral matters. As to Clyde Hammonds punching Pearl Hicks with a pistol that is true, but the intoxication of Virgil Vandy was not a collateral matter; that was properly admitted as bearing directly upon his consciousness of what was taking place, and the correctness of his testimony as to what he had observed.

### The Instructions.

We have already said the jury's verdict is supported by the evidence, hence the court did not err in overruling appellant's motions for a directed verdict.

We find no error in the instructions given, but appellant says he was entitled to instructions on involuntary manslaughter and accidental killing. This is based upon the appellant's evidence that he knocked up a pistol Bowling had drawn on him, and his evidence that it is possible Bowling was killed by the discharge of that pistol.

Appellant relies upon the recent case of Howard v. Com., 260 Ky. 467, 86 S. W. (2d) 126; but the facts there are very different from those in this case. There

Howard and his son were struggling for the possession of a shotgun. The son had it by the muzzle; the father had it by the breech. In the struggle the gun was discharged. The old man did not know whether his finged was on or near the trigger or not. He at least admitted having his hands on the controlling part of a lethal weapon, that he was struggling with his son for its possession, and that possibly he may have set off the fatal shot. From the verdict we know the jury believed he did set it off, and in the absence of the instructions we ordered to be given there was no way for the jury to find the old man not guilty, even though they believed that in fiiring the gun he did so accidentally or unintentionally.

In this case if by any stretch of the imagination this jury should have believed without any evidence to that effect that Bowling had and was shot by the .45-caliber pistol, in the face of all the evidence that he was shot by a .32, the jury would have been compelled under the instructions given and their oaths to have found Newt Benge "not guilty."

Newt Benge testifies to no fact that in the wildest imaginable way could be construed into a possibility that he set off this .45-caliber pistol, whereas Howard's testimony disclosed not only a possibility but a probability, yea almost a certainty he did set off the shotgun.

Howard's testimony disclosed a theory as to how he may have shot his son, whereas Newt Benge's testimony did not disclose how he shot Bowling. He bluntly declares he did not shoot him. Howard had a theory how he did that shooting, whereas Newt Benge has no theory how he did this shooting. He simply says he did not do it. The jury did not believe him. As to when a defendant has a theory to be presented, see Gibson v. Com., 204 Ky. 748, 265 S. W. 339, headnote 9. Morgan v. Com., 257 Ky. 691, 79 S. W. (2d) 1; Evitts v. Com., 257 Ky. 586, 78 S. W. (2d) 798; Luttrell v Com., 250 Ky. 334, 63 S. W. (2d) 292; Morgan v. Com., 242 Ky. 116, 45 S. W. (2d) 850; Lunce v. Com., 232 Ky. 214, 22 S. W. (2d) 629, 630; Southerland et al. v. Com., 217 Ky. 94, 288 S. W. 1051; Dalrymple v. Com., 215 Ky. 25, 284 S. W. 104. What we have said

of this Howard Case is applicable to Long v. Com. (Ky.) 112 S. W. 841.

Appellant has been fairly tried; he has been ably represented in both the trial court and in this one. His testimony is not convincing or such as to impress a jury.

Judgment affirmed.