## Benge v. Commonwealth.

(Decided Oct. 6, 1936.)

MURRAY L. BROWN and C. R. LUKER for appellant.

B. M. VINCENT, Attorney General, and W. OWEN KELLER, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

"Jimmie" Bowling, a man about 26 years of age, was shot and killed by some one at about 8:30 p. m. on Saturday, July 13, 1935, in the yard to the residence of Henry Benge, a farmer residing in Laurel county. The grand jury of the county later indicted the appellant Veltie Benge and his brothers, Gordon and Newt Benge, accusing them of the homicide. The indictment contained a number of counts, one of which charged a conspiracy to commit the alleged murder and that one of them did commit it pursuant to that conspiracy. The remaining three accused each of the defendants with commission of the crime and that the others were present aiding and abetting him to do so. Defendants demanded and obtained a separate trial, and at the trial of appellant (to whom we shall hereafter refer as defendant) he was convicted of voluntary manslaughter and punished by confinement in the penitentiary for two years. From that verdict and the judgment pronounced thereon he prosecutes this appeal, urging by his counsel a number of grounds for reversal; but we have determined that, since we have concluded that one of them is sufficient to authorize a setting aside of the verdict, the others will not be referred to, much less discussed. That ground is, that the evidence was insufficient to submit the case to the jury as against defendant.

The facts surrounding the homicide as contained in this record are in the main the same as set forth in our recent opinion in the case of Benge v. Commonwealth, 264 Ky. 28, 94 S. W. (2d) 38. They were stated in detail in that opinion, and it will not be necessary to repeat many of them in this one, and especially will it be unnecessary to go into details as was done therein. Briefly stated, the salient facts are: That a Holiness protracted meeting was being conducted at the home of Henry Benge, who is an uncle of defendants in the indictment and who resided about two miles from where they resided, and there was a night service at that place on the fatal day. Defendant with his brother Gordon, and perhaps a younger son of the latter, went to that meeting from their home, which they occupied jointly with their parents, and the other brother, Newt Benge

(appellant in the case supra), also went from his home to attend the meeting. They did not travel together, but after they had all arrived at the home of the uncle, some witnesses testified to having seen them together, and one witness testified that she heard one of them breathe a threat against that "s—— of a b—— if he came here." That witness was considerably weakened on cross-examination, and the statement she claimed to have heard was contradicted—not only by the three indicted defendants, but likewise by others who claimed to have been in hearing distance on the particular occasion. Another witness (Jones) claims that after appellant and his brother Gordon arrived at the meeting place, he heard a voice back of him that he concluded was the voice of defendant, and it breathed a similar threat against the deceased if he should appear at the meeting. Not only did defendant deny making any such statement, but others, close around to where the voice that Jones testified about was alleged by him to have come, heard no one make any such remarks, much less defendant. In addition thereto, it was overwhelmingly proven that he was at that time located at a different place on the porch from that attempted to be attributed to him by that prosecuting witness.

The commonwealth proved that the deceased shortly after arriving at the home of Henry Benge was with a crowd at the back of the residence consuming liquor, a pint of which he had brought with him. He also obtained a 45-caliber pistol from an acquaintance while he was so indulging, and went with it around to the front part of the premises where the services were being or about to be conducted. It also appears, uncontradictedly, that Newt Benge, one of the defendants in the indictment, had threatened to have the deceased indicted for a disturbance that he had produced on the highway while intoxicated, and perhaps also for violating the liquor laws of the commonwealth, and that deceased had threatened to do him harm, even to the taking of his life, for having harbored such an intention. Deceased was a tenant on the farm jointly owned and resided upon by defendant and his brother Gordon Benge, and there is not a breath of testimony in the entire record that any disturbance of any kind had ever occurred between them; nor is it in proof anywhere that Newt Benge entertained any ill feeling or malice toward the

deceased, except his dissatisfaction with his prior conduct in the respects to which we have referred.

Newt Benge was sitting upon the outer edge of the porch to his uncle's residence, with his feet hanging over, while the preaching was going on a short distance away in the yard, the congregation occupying some improvised seats, while others stood and still others occupied the front porch of the residence. Just two seats behind Newt Benge, Gordon Benge was located, and defendant was on the porch, as a member of its part of the congregation, at a point some eight or ten feet away from them. While the parties were thus located and adjusted toward each other, the deceased appeared near the edge of the porch and shouted, "Amen." About that time he observed Newt Benge in his described attitude, and he turned upon him with the accusation that the latter "had told a God damn lie" on him, and then commenced to curse and abuse Newt, and, in the language of the witness, called him "all sorts of s—— of b——s." To all of that Newt responded by denying the accusations and offering to conduct the deceased to his home, to which the latter replied: "I wouldn't go ten steps with you before I shot your God damn brains out." He thereupon grabbed Newt by the arm and jerked him off the porch and, perhaps, had him down upon the ground; but he soon arose, and as he did so all of the accused and some three or four other witnesses testified that deceased drew a pistol which he had concealed upon his person and endeavored to point it at Newt, when the latter struck the arm of deceased. Just then a shot was fired from some one's pistol, the ball from which struck deceased in his right cheek bone and passed through his brain but did not make its exit, though the place of its lodgment was easily discoverable by a casual examination of the back of his skull. Immediately upon the shooting appellant went to the spot to ascertain what had happened and he and his two brothers soon left for their home, where they remained until the following Monday, when they were arrested. There was some contradiction in the testimony as to whether the deceased continued in the possession of the pistol he had obtained up to and including the time he was shot; but we think the preponderance of the testimony established the fact that he did, although no witness testified to finding any weapon upon or about his body after he was shot. How-

ever, his brother was among the first persons to reach him and remained with him until his body was carried away; it being first lifted from the ground and placed upon the porch to Henry Benge's residence. Witnesses, however, did discover an empty bottle that deceased had in his possession, but when they made their examinations they discovered no pistol.

The court gave the usual instructions on murder and manslaughter, but declined to submit to the jury the conspiracy count of the indictment for the manifest reason that there was no evidence whatever to establish the conspiracy save and except the incredible testimony of the female witness, to which we have referred, relating to an expression from some one of the three brothers while they were together in the yard shortly before the homicide. That testimony as given by the witness is not only contradicted as we have stated, but the manner in which it was done and the puncturing administered to it by cross-examination renders it extremely improbable that any such remarks were ever heard. However, there was no pretense made by even that witness that appellant made any such remarks. He denied it, as did also his two brothers, and likewise others who were nearby at the time it was alleged to have been made. The same criticism applies to the alleged remarks of appellant as testified to by the witness Jones, to whose testimony we have hereinbefore referred. We do not, as apparently did not the trial court, appraise either of those two alleged incidents as being sufficient to submit to the jury the issue of conspiracy among the defendants to commit the homicide, and the court rightfully declined to do so. With that issue out of the way, the only remaining ground upon which defendant could be convicted was that one of the other two accused individually shot and killed the deceased and the defendant was present aiding and abetting. The proof shows uncontradictedly that Gordon Benge fired the shot from a 32-caliber pistol that killed the deceased and that he did so at a point on the porch almost immediately behind his brother Newt, as hereinbefore pointed out, and that the appellant was then some eight or ten feet away from the immediate scene of the difficulty.

It will at once be seen that in the circumstances, as so outlined, the prosecution against Newt and Gordon Benge rests upon an entirely different basis from the

one against defendant Veltie Benge, whose case we are now considering. No one makes him a participant in any manner in the difficulty resulting in the death of the deceased. On the contrary, it is shown by a number of unimpeached witnesses and without contradiction that, save and except the two items of testimony to which we have referred, defendant on that fatal night was guilty of nothing more than having gone to a public meeting with his brother, and that the latter committed the homicide without any aid or assistance from defendant. During the time of their stay at the place to which they had gone, and prior thereto, neither of the Benges is shown to have imbibed any liquor, but on the contrary they were each duly sober, and neither of them was armed, except Gordon Benge. Whether or not the latter was justified in firing the fatal shot resulting in the death of decedent in defense of his brother Newt, or whether the latter was in any manner blamable for the firing of that shot, are issues totally apart from the case made against defendant, and the fact that we affirmed the conviction of Newt Benge in the case cited supra has no bearing whatever on this prosecution.

We have reiterated the law too often to require again its insertion in this opinion, to the effect that one cannot be convicted of a criminal charge upon mere surmise and suspicion, and that when the evidence produces no more than that it is the duty of the court to direct an acquittal. See Sayler v. Commonwealth, 264 Ky. 53, 94 S. W. (2d) 281; Smith v. Commonwealth, 260 Ky. 52, 53, 83 S. W. (2d) 883; Helton v. Commonwealth, 254 Ky. 290, 71 S. W. (2d) 625; Little v. Commonwealth, 245 Ky. 837, 54 S. W. (2d) 388; Buster v. Commonwealth, 246 Ky. 322, 55 S. W. (2d) 18; Haynes v. Commonwealth, 225 Ky. 234, 8 S. W. (2d) 403; Lockard v. Commonwealth, 193 Ky. 619, 237 S. W. 26; Anderson v. Commonwealth, 196 Ky. 30, 244 S. W. 315. In the last-cited case the facts were analogous in many respects to those appearing in this one, and we reversed the judgment of conviction with directions to direct the defendant's acquittal if the evidence upon another trial should be substantially the same as in the record reviewed by us. In that case, as well as this one, the accused attended a meeting in the county with others, one of whom later in the day committed the crime for which appellant therein had been convicted as a coconspirator,

or as an aider and abettor. The only evidence against him was that he had gone to the meeting with the actual perpetrator of the crime and was more or less associated with that person throughout the day. He had also made some remarks during the day of no more convincing proof of his guilt than those contained in this case, to which reference has been made, and we held them insufficient to sustain the conviction, as well as insufficient to authorize a submission of the case to the jury. Following that opinion, and the reiterated rule approved therein as contained in the other later ones above listed, we conclude that appellant's motion made at the close of the commonwealth's testimony, and repeated at the close of all of the testimony, for his directed acquittal, should have been sustained.

Wherefore, the judgment is reversed, with directions to set it and the verdict aside, and for proceedings consistent with this opinion.