# Benge v. Commonwealth

(Decided Oct. 9, 1936.)

504

C. R. LUKER and MURRAY L. BROWN for appellant.

B. M. VINCENT, Attorney General, and W. OWEN KELLER, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Affirming.

Gordon Benge has appealed from a sentence of fourteen years' imprisonment for slaying James Bowling.

Three Benge brothers were accused of this homicide. Newt Benge was tried October 13, 1935, and the ten-year sentence imposed on him was affirmed. See 264 Ky. 28, 94 S. W. (2d) 38. Gordon Benge's trial was had on February 9, 1936, and the jury was unable to agree. Veltie Benge was sentenced to two years' imprisonment at his trial had on February 20, 1936, and on appeal that judgment was on this day reversed. See 265 Ky. 476, 97 S. W. (2d) 51.

Gordon Benge's second trial resulted, on March 12, 1936, in the sentence from which this appeal is prosecuted. The detail of facts in the two former opinions makes it unnecessary that much be said in this one.

Gordon Benge testified to this account of the shooting. "Jimmie Bowling walked from behind the house, the preacher was calling for mourners and he walked around the house, he looked like he was drunk and he said, 'Amen, by God!' and turned around and walked to where that boy (Newt Benge) was. Jimmie said to Newt Benge, 'You G—— d—— s—— of a b——, you have been lying on me.' And Newt said, 'Me and you are good friends, I am going to take you home.' And Jimmie Bowling said, 'If you take me home I will shoot your G—— d—— brains out before we have walked ten steps,' and he jerked his pistol and jerked Newt Benge off the porch and I jerked my pistol and shot over Newt's shoulder. Why did you shoot there? To save my brother's life. * * * I shot at him, I don't know whether I hit him or not."

He was handed the bullet that was removed from the head of Bowling, asked what kind it was, said it looked like a .32, and admitted he was shooting a .32 pistol. From this it is clear his theory of the case was he shot Bowling in defense of his brother. His right so to shoot was submitted to the jury by an appropriate instruction, and it found against the accused.

There was evidence Bowling had a pistol at the time of the shooting, and there was evidence he did not. No pistol was found on or about his body. There was evidence he did not own a pistol, but it is claimed he had a .45 Colt pistol belonging to Clyde Hammonds that had recently been taken from Hammonds. Oran Crook was introduced, and he testified he was with Clyde Hammonds out behind the house when the shooting occurred, and that he (Crook) then got the .45 Colt pistol from Clyde Hammonds. Clarence Thomas says he was present and supports the testimony of Crook about this occurrence.

If Clyde Hammonds had this pistol or Crook had it, then Bowling did not have it, and the appellant's theory falls to the ground. Hammonds testified he did not give a pistol to Crook after the shooting and did not have a pistol there at the time. He was never asked if James Bowling had his pistol at the time of the shooting.

In this state of the evidence the jury had ample support for a finding that Bowling did have a pistol or that he did not, and hence to find the accused had or had not reasonable grounds to believe his brother was in danger. That was the question for the jury, and its verdict will have to stand unless there is merit in some of the grounds urged for reversal.

### Refusal of Continuance.

Appellant sought a continuance because of the absence of twelve witnesses, but his motion was overruled. Five of these later appeared and testified. The accused read, from his affidavit, the evidence of four others. He did not read, from his affidavit, the evidence of two of them, and he failed to state, in his affidavit, what the evidence of the other one would be. The commonwealth used 19 witnesses and the accused 23, so the facts were well presented, and there is no merit in this point.

### Conduct of Attorney for Commonwealth.

In his opening statement the attorney for the commonwealth said:

"When the indictment was drawn the Commonwealth did not know who killed Jimmy Bowling, and there was a hundred people present at that time. * * * We will show that they were in three or four

feet of where the killing occurred. * * * We will show that they [certain witnesses], helped to dig the grave and helped to bury him, [referring to Jimmy Bowling], without divulging the secret. * * * We will show you the ball [referring to the bullet which was taken from the head of Jimmy Bowling] that the doctors took right out of his head. * * * We will show you that it was their contention that he [Jimmy Bowling] shot his own brains out.''

In his closing argument he said:

''One time I said, 'Gentlemen of the jury, in stating a case, if you don't stop crime a grave yard will grow up in your front yard, and one man hung the jury and on the following Sunday his son was found with his arms crossed, lying in the road, shot from ambush.' ''

On each occasion the accused objected, and moved to set aside the swearing of the jury and continue the case. His objections and motions were both overruled, and he excepted.

We think it was permissible for the commonwealth to say it expected to prove these things, that it was permissible that it prove them, if it could, and conclude there was no error in allowing it to do so, and we find nothing prejudicially improper in what was said in the closing argument, and are unable to see how the result of this trial could have been affected by it.

### Morals of Deceased.

The court over the objection of the accused allowed the commonwealth to show the deceased was a member of the church, did not drink at the time he was killed, but attended church regularly and sang in meeting. The indictment did not charge these men with the slaying of a saint, but with the slaying of a man. It is just as great a crime to kill the most hardened criminal as it is to kill the most upright and illustrious citizen in the land; hence evidence of the good or bad morals of the one slain has no proper place in a trial for murder. In Roop v. Com., 201 Ky. 828, 258 S. W. 667, we said such evidence was not competent, but did not reverse the judgment. The court should not have allowed this evidence to be introduced, but we cannot say its admission was prejudicial. It was so overwhelmingly refuted by

the evidence for the accused as to utterly destroy the force of it, and to rather reflect upon the correctness of the information of those who testified to it.

### The Fatal Ball.

On December 23, 1935, the body of Bowling was exhumed, and Dr. O. D. Brock, in the presence of the sheriff, removed from the skull the fatal ball. Over the objections of the accused, the doctor and sheriff were permitted to testify about this and this ball was introduced in evidence. The production of this ball, recovered by the exhumation of this body, absolutely exploded the defendant's claim that Bowling had shot himself with this .45 Colt pistol belonging to Hammonds, which Benge claims he had, and it was of the utmost importance to the accused to keep out this evidence if possible.

The appellant contends this was erroneous because he was not given notice of the proposed exhumation, and he was not present at it, and that his objection then made and his motion to discharge the jury should have been sustained.

The basis of his contention is that this was done without notice to him and he was not present at the time. This was done more than five months after the death of Bowling, but there is no more reason a ball, taken from the body of the slain five months after death, may not be introduced than one removed five minutes after death. "Evidence obtained by making a post mortem examination is not inadmissible because such examination was made after a prosecution for murder had been commenced and without notice to the accused." 30 C. J. p. 220 sec. 449.

This text is based on the language in State v. Leabo, 89 Mo. 247, 1 S. W. 288, 293. That was a trial for murder, and while the opinion affirming it does not say what sentence was imposed, it does say:

"However painful it may be to us to announce, as a result of our careful examination of this record, that the sentence pronounced against him must be executed, yet we have no function to perform but to declare the law."

The same point was made in the case of State v. Brooks, alias Maxwell, for the murder of Preller, 92 Mo.

542, 5 S. W. 257, 330, and the court adhered to its ruling in the Leabo Case. An appeal to the United States Supreme Court was dismissed (Missouri v. Brooks, 124 U. S. 394, 8 S. Ct. 443, 31 L. Ed. 454), and Brooks was executed. Following those authorities we find no merit in appellant's contention.

### At the Funeral.

The commonwealth was permited to show by Abe Bowling that none of these indicted defendants attended the funeral of the deceased; that this witness then knew who had killed James Bowling and did not tell his uncle, the father of the deceased. We can see no great effect this testimony could have had either way, but certainly its admission was not prejudicial.

### Other Rulings on Evidence.

The accused testified in his own behalf. When he did so he waived the protection given him by section 1645, Ky. Stats., and became just as any other witness. On cross-examination he was asked if he had been present when Newt Benge was tried, and he said he had. Then he was asked this question, and over his objection he was required to answer it: "Tell the jury whether or not you testified on the trial when Newt Benge was tried or not?"

The defendant's motion to discharge the jury was overruled, and this occurred:

"Q. Why was it that you shot to save Newt Benge's life and wouldn't testify when Newt Benge was on trial here? A. You ought to have put me on."

The protection is extended by the statute *to the defendant on trial.* Gordon Benge was not on trial in the Newt Benge Case, and Newt or the commonwealth either could have called Gordon as a witness, or commented on his failure then to testify. See Thomas v. Com., 257 Ky. 605, 78 S. W. (2d) 777. Hence there was no error in asking him in this case why he had not testified in that one.

This question was asked him over his objection:

"Isn't it a fact that you didn't think at that time the Commonwealth knew who had done the killing and you were trying to conceal who actually did the killing, isn't that the reason you didn't tell it?"

The defendant gave this answer: "If they wanted to know why didn't they put me on, I was here all the time."

Then this question was asked him:

"On the trial of Newt Benge wasn't it the contention of Newt Benge and you and all of them that Jimmie Bowling had shot his own self with this .45 automatic?"

The defendant's objection and motion to discharge the jury were both overruled. During the colloquy the attorneys lost sight of the question and it was never answered.

In view of what we have said above, we conclude there was no error in this.

### Motion for Peremptory Instruction.

This was a typical case for a jury, there is no complaint of the instructions except failure to give a peremptory instruction, and there is ample evidence to sustain the verdict; hence the judgment is affirmed.