Tommie PERDUE, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 92–SC–734–MR.

Supreme Court of Kentucky.

Sept. 21, 1995.

As Corrected on Denial of Rehearing
and Petition for Modification
March 21, 1996.

Donna L. Boyce, Julie Namkin, Assistant Public Advocates, Department of Public Advocacy, Frankfort, for appellant.

Chris Gorman, Attorney General, Ian G. Sonego, Paul D. Gilbert, Assistant Attorneys General, Criminal Appellate Division, Office of the Attorney General, Frankfort, for appellee.

LAMBERT, Justice.

This appeal is from the final judgment of the Russell Circuit Court adjudging appellant guilty of the crime of complicity to arson for which he was sentenced to life imprisonment and guilty of the crime of complicity to commit murder for which he was sentenced to death. A highly unusual aspect of this case is that appellant was neither an immediate actor in the victim's death nor was he even present at the scene of the victim's murder. Appellant's murder conviction and death sentence are premised on his having brokered, or arranged for the victim's murder in exchange for money.

On or about July 22, 1988, Herbert Cannon died in an automobile fire in Russell County, Kentucky, near the entrance of Lake Cumberland State Park. Destruction of the automobile was nearly complete as was the destruction of the victim's remains. In life, Herbert Cannon was a man of normal height and weight, but his remains measured just 41 inches and weighed 35 pounds. To cause the extraordinary destruction of the motor vehicle and the victim's remains, evidence was presented that the fire produced heat of 1800—1900°F and from this and other evidence, there was no doubt that accelerants were used. The evidence also indicated that Cannon was awake during the fire.

For about two years after the murder, the police were without substantial leads as to the perpetrators of the crime. However, in August of 1990, the Kentucky State Police were contacted by Cynthia Moore, a woman who had formerly lived with one Frank Eldred, and she possessed information about the death of Herbert Cannon which had not been publicly disclosed. Moore identified appellant as one of the participants in the murder and she agreed to wear a tape-recording device and attempt to obtain taped information and/or admissions from appellant. Thereafter, Sue Melton, one who appears to have been the primary instigator of Cannon's murder, was indicted. Based on Melton's statements, together with the Moore tape-recording of appellant, as well as statements Moore had obtained from Frank Eldred, some of which were made in the presence of appellant, the police pieced together what happened in the criminal episode. In substance, it appears that Sue Melton, a woman who had been married to the victim, Herbert Cannon, and who had remained the beneficiary of a $50,000 policy of insurance on his life, sought to have Cannon murdered so that she could collect the life insurance death proceeds. Sue indicated to her friend, Arlene Ploetner, that she wanted to "get somebody to teach Herbie a lesson," and being a dutiful friend, Ploetner contacted appellant about arranging for the murder. There was evidence that Ploetner placed a telephone call to appellant from Sue Melton's home and that the long-distance call was reflected on Melton's bill. Thereafter, appellant arranged for Frank Eldred to murder the victim and an agreement was reached as to the amount Melton would pay appellant and Eldred for the murder.

To accomplish the murder, Sue Melton manipulated the victim into the company of Frank Eldred and Arlene Ploetner and it was they who drugged the victim and burned his car with him inside. Prior to appellant's trial, Sue Melton entered into a plea agreement for the offenses of conspiracy to commit first degree assault and conspiracy to commit kidnapping. Upon her guilty plea and for her co-operation, she was sentenced to a total of twenty years. Melton testified for the Commonwealth at appellant's trial. Frank Eldred was tried after Sue Melton's guilty plea but prior to the trial of appellant. Eldred was convicted and sentenced to life imprisonment for first degree arson and to life without possibility of parole for twenty-five years for murder. Ploetner received two five-year sentences for conviction of facilitation to murder and arson.

Prior to our review of the issues raised by appellant, we must comment upon

**154**

the standard of review we will apply to unpreserved claims of error. This is necessary because a great many of the issues appellant has raised are wholly or substantially unpreserved. Appellant and the Commonwealth agree that in death penalty cases a different standard of review is applied and this is in accordance with KRS 532.075(2) and our decision in *Ice v. Commonwealth*, Ky., 667 S.W.2d 671, *cert. denied*, 469 U.S. 860, 105 S.Ct. 192, 83 L.Ed.2d 125 (1984). In almost every death penalty case, ingenious appellate counsel forces us to confront claims of error which are unpreserved by proper objection. The prevailing rule for dealing with such circumstances is succinctly stated in *Sanders v. Commonwealth*, Ky., 801 S.W.2d 665 (1990), *cert. denied*, 502 U.S. 831, 112 S.Ct. 107, 116 L.Ed.2d 76 (1991) as follows:

> Where the death penalty has been imposed, we nonetheless review allegations of these quasi errors. Assuming that the so-called error occurred, we begin by inquiring: (1) whether there is a reasonable justification or explanation for defense counsel's failure to object, e.g., whether the failure might have been a legitimate trial tactic; and (2) if there is no reasonable explanation, whether the unpreserved error was prejudicial, i.e., whether the circumstances in totality are persuasive that, minus the error, the defendant may not have been found guilty of a capital crime, or the death penalty may not have been imposed. All unpreserved issues are subject to this analysis.

*Id.* at 668 (citations omitted).

■ By virtue of the foregoing, we are required to make a three-pronged inquiry. First is whether an error was committed. Next is whether there was a reasonable justification for the failure to object, including trial tactic; and finally, even without a reasonable explanation, whether the error was so prejudicial that without it the defendant might not have been found guilty or the death penalty might not have been imposed.

Appellant begins his brief with a twenty-five page argument alleging prosecutorial misconduct at both the guilt and penalty phases of his trial. Contained in this argument are seventeen specific contentions containing numerous additional claims of error, beginning with the first utterances of the Commonwealth's Attorney and continuing until his last breath at closing argument in the penalty phase of the trial.

It is profoundly troublesome to discover an almost complete absence of objection by defense counsel to many of the alleged errors. In those instances where the defense was able to muster an objection, it was almost always sustained, and an admonition often followed. Nevertheless, we have identified our standard of review of unpreserved claims of error, and will apply that standard to the allegations of prosecutorial misconduct.[1] We will now begin our discussion of the specific claims of error.

## I. GUILT PHASE

■ During the guilt phase of the trial, the Commonwealth undertook to elicit information concerning the drug distributions of appellant, including alleged outstanding debts for marijuana delivery. Such testimony was made relevant and admissible as appellant had contended that incriminating portions of the taped conversation between himself and Cynthia Moore concerned marijuana sales, and not the death of Herbert Cannon. As such, the inquiries by the Commonwealth were not error as they related to appellant's defense.

■ Appellant also contends that statements concerning witnesses' fear of appellant were prejudicial error. At trial, Sue Melton testified that appellant threatened to harm her daughter unless she paid him the money owed for his involvement in the murder. Cynthia Moore testified that she feared appellant and voluntarily stayed in jail for her own protection. No objection was made to this testimony, nor were there any references to it made during argument. In fact,

**1.** It seems obvious, but we must state again, that "unpreserved errors" cannot technically be considered "error" since there was no opportunity for correction at trial. In many instances it is clear that appellant did not regard it as error, or deliberately waived it in hopes of gaining an advantage. We are not reluctant to hold appellant to his procedural default.

appellant attacked the testimony on cross-examination. As such, we do not consider this to be palpable error, in violation of any reasonable trial strategy. In the context of the case against appellant, these minor references were truly harmless. *Sanders v. Commonwealth*, Ky., 801 S.W.2d 665, 668 (1990).

■ The next claim of error arises from the Commonwealth's alleged misstatement of evidence during guilt phase closing argument. In the taped conversation between appellant and Cynthia Moore, several times appellant refers to the murder of Herbert Cannon and says "it got done." Only once is his personal involvement expressly acknowledged as "*we* got it done." During closing argument, however, the prosecution made several references to the tape and misquoted appellant as stating "I got it done." Appellant did not say "I got it done" anywhere in the taped conversation. However, the jury could have reviewed the tape recording and accompanying transcript during its deliberations. While we disapprove of the prosecutor's misstatement of the evidence, the error was harmless. RCr 9.24.

■ Appellant claims other error as to the closing argument at the guilt phase of his trial. At one point, the prosecutor stated that Sue Melton stepped forward and pled guilty, but the appellant "has come down here, and he wants a trial, which he is entitled to. He didn't plead guilty. He pled not guilty." While such a statement strains the boundaries of propriety by its implication, it cannot be considered error as it is a valid statement of the facts surrounding appellant's trial. Moreover, the comment was in rebuttal to appellant's attack on Melton's credibility.

Appellant next claims prejudice in various other arguments made by the Commonwealth. First is an alleged error in the Commonwealth's recitation of the costs it had paid in securing Cynthia Moore's testimony. Error is claimed in both the misstated amount and the circumstances surrounding the amount. We consider this claim to be wholly without merit and decline to address it further. Appellant also contends that the prosecution's comments on the courage of two witnesses was an attempt to buttress the credibility of these witnesses. The record reveals no error.

■ A more troubling statement is found in the Commonwealth's assertion that "I believe Cynthia Moore will testify that Frank had said they had brought [the victim] here to Russell County because you could get away with murder in Russell County. So they came here, to our Russell County, for this murder to take place." Later the Commonwealth rhetorically asked "[w]hat does this man think? Does he think that a jury in Russell County is going to let him get by with this? No." These statements were without objection.

We condemned appeal to local prejudice in *Taulbee v. Commonwealth*, Ky., 438 S.W.2d 777 (1969). In *Taulbee*, the prosecutor stated, among other things, that "I just hope if the jury turns him loose that he leaves and won't be back here in Estill County robbing and stealing from our people over here." *Id.* at 778. The arguments made in the present case are of a similar character. However, as there was no objection, we cannot say that the jury might have been persuaded to find appellant not guilty of these crimes but for the offensive statements. *See Sanders v. Commonwealth*, Ky., 801 S.W.2d 665, 668 (1990).

Appellant's remaining claims of prosecutorial misconduct during the guilt phase of trial have been reviewed and found to be unpreserved, insubstantial or harmless. Further discussion of these alleged errors is unwarranted.

■ The next issue to be addressed is appellant's contention that the tape-recording of his conversation with Cynthia Moore should have been excluded on grounds that it was inaudible, irrelevant and inflammatory. With respect to preservation, the only objection was based on a claim of inaudibility and the other grounds for exclusion presented here were not presented to the trial court. As to the claim of inaudibility, we simply observe that such is within the sound discretion of the trial court and nothing here indicates abuse of discretion in that regard.

**156**

*Sanborn v. Commonwealth,* Ky., 754 S.W.2d 534, 540 (1988).

In this forum more substantially, appellant's principal grounds for urging exclusion of the tape-recording are based on hearsay. It should be recalled that after contacting the police with information which had not been publicly disclosed, Cynthia Moore was "wired" and sent to appellant for the purpose of obtaining information and admissions from him. In the process, Moore pretended that she wanted appellant's advice and/or assistance with the murder of her husband. As a part of the ruse, Moore indicated that she knew all about the murder of Herbert Cannon and knew of the participation of Frank Eldred and appellant. As the tape-recorded conversation between Moore and appellant unfolded, several statements attributed to Frank Eldred, one who was not then present, were repeated by Moore. These hearsay statements attributed to Frank Eldred which appear in the tape-recording are now challenged by appellant. As the errors alleged were not properly preserved, the standard in *Sanders v. Commonwealth,* Ky., 801 S.W.2d 665 (1990), will be observed.

■ At the outset, the statements and information attributed to Eldred are limited in number and in scope. The tape-recording is of a forty-five minute conversation and only a few items of information are attributed to Eldred and these are not at all damning with respect to any attribution of participation by appellant. The reason for Moore's references to Eldred appears to have been to establish her bona fides with respect to her knowledge. Moore appears to have believed that unless she demonstrated some knowledge of what had transpired, appellant would have been unwilling to discuss his role in the Cannon murder. As such, the statements attributed to Eldred were not offered for their truth, but for the non-testimonial purpose of demonstrating what provoked appellant's responses. The circumstances here are remarkably similar to those in *Sommers v. Commonwealth,* Ky., 843 S.W.2d 879 (1992):

> The truly damaging evidence in that regard was the testimony that Sommers had admitted the fact. The evidence as to the

circumstances which culminated in the admission was not offered for the purpose of providing its own content, but merely to provide a foundation. Admission of that evidence was proper in the present context.

*Id.* at 886.

■ Appellant's further complaints with respect to the tape-recording of his conversation with Cynthia Moore have been examined and found to be insufficient for reversal. We discern no fundamental unfairness in devising a fictitious prospective murder as a means of provoking inculpatory statements from one suspected of participating in an actual murder. Appellant's statements, as shown by the tape recording, did far more than demonstrate a predisposition to commit a crime in the future and the methods employed by the Commonwealth did not amount to entrapment. In *Illinois v. Perkins,* 496 U.S. 292, 110 S.Ct. 2394, 110 L.Ed.2d 243 (1990), the Court held that Miranda warnings were not necessary when an undercover police officer entered a jail for the purpose of investigating a murder suspected of having been committed by an inmate and thereby obtaining statements in which the inmate implicated himself in the murder. *Perkins,* 496 U.S. at 298, 110 S.Ct. at 2398. Significantly, the Court rejected the views of Justice Brennan, lauded by appellant, who railed against "the method by which the police extracted the confession in this case." *Perkins,* 496 U.S. at 301, 110 S.Ct. at 2399.

In sum, there was no impropriety in the manner by which the police obtained the tape-recording. To the extent appellant's comments demonstrate his predisposition to commit crime or reveal evidence of other crimes, we simply observe that appellant is stuck with what he did and said. Perhaps with a proper objection or motion the tape could have been redacted to eliminate matters which may have been more prejudicial than probative, but without affording the trial court an opportunity to rule, we cannot say the requirements of *Sanders v. Commonwealth,* Ky., 801 S.W.2d 665, 668 (1990), have been satisfied.

Appellant next claims reversible error in the admission of hearsay evidence. The witnesses whose testimony is thus challenged are Sue Melton, Darrell Jenkins, and Cynthia Moore. There were some objections to these witnesses' testimony but the claims of error are substantially unpreserved.

In support of its theory that appellant was a broker or go-between in arranging the murder, and in an effort to establish his complicity (prior knowledge and participation), the Commonwealth called Sue Melton to testify as to how the plot to kill Herbert Cannon began. Melton stated that she solicited Arlene Ploetner to get someone to "teach Herbie a lesson," a euphemism understood to refer to the victim's murder. Melton then stated that Ploetner called appellant and at trial produced a telephone bill which she said established that a call was made to appellant from her telephone as she had testified. Melton did not testify as to the content of the Ploetner/Perdue telephone conversation. Her testimony was to establish only that it existed on that occasion.

Despite the lack of any preservation (indeed, counsel for appellant declared that he had no objection to introduction of the telephone bill), appellant now claims that the trial court should have intervened and prohibited Sue Melton's testimony as to the telephone call and the telephone bill. We have carefully examined the transcript and discover Melton's statement that Ploetner called appellant immediately after Melton had suggested that Cannon be murdered. She did not repeat the substance of either party's conversation but merely stated that the call had been made and at trial verified it with her telephone bill.

 Perhaps a properly formulated objection based on grounds of hearsay or failure of proper authentication would have been sustained, and counsel required to produce the evidence, if possible, by some other means. Perhaps a proper objection would have prompted counsel to furnish the required foundation or otherwise present the evidence in a more skillful manner. Without an objection, however, this Court may only speculate as to what arguments and rulings would have been made and what steps the parties would have taken thereafter. To require exclusion without an objection, we would have to conclude as a matter of law that there were no facts or circumstances which would have justified admission of the evidence. As the record does not preclude other explanations, we discern no error. In passing, we observe that appellant vigorously cross-examined Sue Melton about her lack of acquaintance with Tommie Perdue prior to the murder and challenged her testimony as to the existence of the telephone call. As such, we cannot say that appellant's failure to object was not trial strategy.

Appellant next claims error in the testimony of Darrell Jenkins, one who admitted at the beginning of his testimony that he had no personal knowledge of the events; and that his information derived from what Sue Melton and Arlene Ploetner had told him. KRE 602. Despite appellant's failure to object, the trial court intervened on various occasions and sustained objections and admonished the jury to disregard questions and answers. While much of Jenkins' testimony was incompetent for various reasons, it was essentially meaningless and certainly not grounds for reversal. RCr 9.24.

Appellant similarly challenges the testimony of Cynthia Moore in which she was permitted to repeat statements made by appellant and by Frank Eldred, a man with whom she was then living, subsequent to the murder. The Moore testimony purports to have been based on conversations she overheard prior to the tape-recording she made of appellant. Her testimony is vague as to whether the statements were made by appellant or by Frank Eldred (frequent use is made of the collective "they") but describes in considerable detail the manner in which the victim was murdered, the means by which he was taken to Russell County, and reveals other details such as the use of drugs and alcohol.

 Appellant objected to this phase of the Moore testimony on hearsay grounds. The trial judge overruled the objection and held that so long as appellant was present, Moore would be permitted to testify as to what either appellant or Eldred said in her presence. The trial court appears to have

held the mistaken impression that there is as an exception to the hearsay rule for out-of-court statements made in the presence of the party against whom they are offered. Any such impression is erroneous. What appears to have been intended was use of the adoptive admissions exception to the hearsay rule. We will refrain from an extensive discussion of adoptive admissions except to say that mere presence when the statement is made is insufficient, and to be admissible the statement must satisfy the requirements of KRE 801A(b)(2) which has as its principal component some manifestation of adoption or belief in the truth of the statement. ROBERT G. LAWSON, THE KENTUCKY EVIDENCE LAW HANDBOOK, § 8.20 (3d ed. 1993).

 A more appropriate basis for admission of the Moore testimony in which she repeated statements made by appellant and Frank Eldred is the hearsay exception for statements of co-conspirators. By this exception, codified at KRE 801A(b)(5), the hearsay rule does not require exclusion of out-of-court statements offered against a party which were made by a co-conspirator during the course and in furtherance of the conspiracy. According to Moore's testimony, a principal component of the conversations was the expected payments from Sue Melton for the murder of Herbert Cannon. Moore testified to having heard conversations in which appellant and Eldred said that Sue owed twenty-four hundred or twenty-six hundred dollars to Tommie, appellant herein, and thirty-four hundred to Frank and that a Cadillac automobile was delivered to Frank in part payment. In the same conversations were the statements referred to hereinabove in which the details of the murder were discussed. Evidence was presented that the purpose of the conspiracy was murder for profit with payment to be made from insurance proceeds. As the object of the conspiracy had not yet been accomplished, statements made in furtherance thereof by the co-conspirators concerning their continuing endeavor were admissible. KRE 801A(b)(5); *see also Canada v. Commonwealth*, 262 Ky. 177, 178, 89 S.W.2d 880, 881 (1936).

 Appellant's unpreserved complaint concerning the Commonwealth's failure to prove chain of custody is groundless. The record reflects that upon appellant's failure to object to the identity of the body, the trial court summoned counsel for the parties and appellant to the Bench and at that time established that counsel for appellant deliberately waived his right to object. There was other evidence from which the jury could have believed that the body found at the scene of the crime was indeed the body of Herbert Cannon. Appellant's failure to object and require proof of a perfect chain of custody was not inconsistent with his defense of denial and alibi. Evidently, appellant and his counsel determined that it was in their best interest to spare the jury further gory details as to the manner in which the body had been identified.

 Appellant's complaint of exploitation of sympathy for the victim does not approach grounds for reversal. There was evidence as to the victim's age, his employment, his membership in the National Guard, his generally good reputation, and the fact that he did not use and was opposed to the use of illegal drugs. Such evidence did not glorify the victim nor portray him as a "saint." *Benge v. Commonwealth*, 265 Ky. 503, 97 S.W.2d 54, 56 (1936); *Dean v. Commonwealth*, Ky., 777 S.W.2d 900, 904 (1989). Moreover, the evidence as to the victim's non-use of drugs was relevant to support the Commonwealth's contention that the drugs found in the victim's body were not self-administered; that he had been drugged to the point of unconsciousness prior to being murdered. This Court has long observed the principle that reasonable evidence concerning a victim's essence may be admitted and that a defendant has no right to be tried only "for the murder of a statistic." *McQueen v. Commonwealth*, Ky., 669 S.W.2d 519, 523, *cert. denied*, 469 U.S. 893, 105 S.Ct. 269, 83 L.Ed.2d 205 (1984). The evidence presented here was not at all improper.

Appellant next complains that the prosecution was permitted to withhold evidence which should have been presented during its case in chief and present such evidence on rebuttal. Our review of this issue reveals no abuse of discretion. RCr 9.42(e); *Pilon v. Commonwealth*, Ky., 544 S.W.2d 228 (1976).

Appellant also claims reversal on grounds that the trial court violated RCr 9.38 by disallowing individual voir dire as to questions regarding pretrial publicity. In substance, what happened was that during group voir dire, the trial court questioned prospective jurors about what they had heard of the case and then permitted a limited additional questioning during individual voir dire. Based on the answers during group voir dire, there appears to have been little or no indication that the venire had been exposed to pretrial publicity.

■ For resolution of this issue, we will rely on *Thompson v. Commonwealth*, Ky., 862 S.W.2d 871 (1993), which recognized the "better practice" of individual voir dire but stated that "whether individual voir dire is to be conducted is within the discretion of the trial court." *Id.* at 874. We recognize that RCr 9.38 became effective on January 1, 1989, and that it declares that individual voir dire "is required." Nevertheless, to justify reversal, there must be a showing of prejudice which has not been made in this case.

Appellant next seeks reversal for what he claims are seven incidents of the trial court having improperly injected itself into the trial. These claims are wholly unpreserved. We will refrain from a particularized discussion of these seven instances as they simply reflected the trial judge's personality or were matters within his sound discretion. With indifference to the requirement of preservation, appellant has combed the record to discover whether the trial judge made any remark not to his liking about which he can now complain in this forum. Indeed, most of appellant's complaints appear to have resulted from an abundance of caution by the trial court. In many instances, the trial court made *sua sponte* interventions on appellant's behalf. As such, the trial court's role and discretion reiterated in *Transit Authority v. Montgomery*, Ky., 836 S.W.2d 413, 415–16 (1992), is controlling.

Appellant's unpreserved claim that Commonwealth's exhibits 3 and 4 are photographs so inflammatory as to require reversal is without merit. The Court has examined these photographs and concluded that they do not meet the standard required by *Clark v. Commonwealth*, Ky., 833 S.W.2d 793, 794–95 (1991).

■ Appellant's next claim is that he was prejudiced by an inability to inspect the burned automobile before it had been destroyed by the Commonwealth, and before appellant had been indicted. We have recently dealt with this issue in *Johnson v. Commonwealth*, Ky., 892 S.W.2d 558 (1994). In *Johnson*, the victim was shot while driving away in his truck. The truck was released by the Kentucky State Police after physical evidence was taken and photographs were made. We held that there was no bad faith on the part of the prosecution, and that photographs and evidence made available to Johnson precluded any prejudice. *Id.* at 561. In the present case, the Commonwealth's failure to preserve the burned automobile was not in bad faith, nor did it unfairly prejudice appellant in presenting his defense. All relevant evidence relating to the automobile was made available to appellant. Unlike *Sanborn v. Commonwealth*, Ky., 754 S.W.2d 534, 539 (1988), where we referred to the prosecutor's actions in erasing audio tapes as "misconduct of constitutional proportions," there was no misconduct in this case.

■ Appellant asserts error in the lack of a hearing as to his identification by Tina Spears in a photographic lineup. At trial, Spears testified that she saw appellant at Sue Melton's apartment, before the murder of Herbert Cannon. She identified appellant two years later and again at trial. Although appellant moved the court for a hearing on the admissibility of identification testimony by Spears, the record does not reflect a ruling, or reveal whether any hearing actually took place. However, the photographic array was preserved and placed into evidence, and there is no indication that its production was unduly suggestive. It is the burden of defense counsel to insure that any hearings on suppression go forward so that the relief allegedly sought may be granted at trial. Suppression claims which first arise in appellate courts come too late. In *Watkins v. Sowders*, 449 U.S. 341, 101 S.Ct. 654, 66 L.Ed.2d 549 (1981), upholding decisions of this Court, the United States Supreme Court

determined that a hearing on the reliability of a pretrial identification lineup was not constitutionally required. *Sowders,* 449 U.S. at 349, 101 S.Ct. at 659; *Watkins v. Commonwealth,* Ky., 565 S.W.2d 630, 631 (1978); *Summitt v. Commonwealth,* Ky., 550 S.W.2d 548, 550 (1977). There is no evidence that the identification was improper, and we decline further review of this issue.

■ Appellant's claim that the trial court erred in failing to grant him a directed verdict is also without merit. In support, appellant claims that the evidence was insufficient to prove that he acted as an accomplice in the murder of Cannon, or alternatively, that the only evidence was that of facilitation rather than complicity. When reviewing a defense claim of insufficiency of the evidence, we must determine "[i]f under the evidence as a whole it would not be clearly unreasonable for a jury to find the defendant guilty, he is not entitled to a directed verdict of acquittal." *Commonwealth v. Sawhill,* Ky., 660 S.W.2d 3, 5 (1983); *see also Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). On review we look to the lengthy findings made by the trial court in response to the motion for a directed verdict. The court, in its findings, explained that the Commonwealth had proved the death of Herbert Cannon, the burning of Cannon's vehicle, and that appellant was involved from the early stages in the planning of Cannon's murder. There was evidence of appellant's meetings and telephone conversations before the murder with those who carried out the crime, as well as his recorded recollections of the means and mode of Cannon's death, and his collection of money in payment for the crime. Under our standard in *Sawhill,* the evidence was ample.

■ Appellant next takes issue with five separate areas of guilt phase jury instructions, but only one such argument is preserved for our review. That argument, that the trial court erred in refusing to instruct on complicity to first degree assault and kidnapping, is wholly without merit. The purpose of the crime was to obtain the murder of Cannon. That was the expectation of Sue Melton, and that was the result achieved by

burning Cannon alive. An instruction on assault and kidnapping would have been unsupported by the evidence.

■ Appellant did not request a facilitation instruction but vigorously claims here that its omission was error. Appellant claims that even though he may have known of the plan to kill Cannon, he had no interest in such an outcome; that he merely and gratuitously put the interested parties in touch with one another. Facilitation reflects the mental state of one who is "wholly indifferent" to the actual completion of the crime. KRS 506.080(1). Complicity, however, may be accomplished without physical aid or involvement in the crime, so long as the defendant's actions involve participating with others to carry out a planned crime. In the present case, appellant was involved in the early stages, and set in motion the events which ultimately resulted in the death of Cannon. Far from being a detached observer, appellant's intention was to receive monetary benefits from causing Cannon's death.

■ We suppose the jury could have believed that appellant participated in enough of the offense to constitute facilitation but that he did not participate sufficiently to constitute complicity. If appellant had sought a facilitation instruction on such a basis and it had been denied, reversal might be in order. In fact, however, appellant sought no such instruction. Indeed, he affirmatively objected to submitting instructions on lesser included offenses stating "as far as Mr. Perdue is concerned, since he has denied doing it, I mean—I don't think we have any lesser includeds." Inasmuch as he otherwise requested and objected to instructions and in general participated fully in the process, his failure to request a facilitation instruction was undeniably trial strategy. To reverse in such a circumstance would be to disregard the role of the trial court and relegate it to a point of irrelevancy.

■ As to appellant's claim that a third degree arson instruction should have been given, this, too, is without merit. Third degree arson requires the lack of intention to damage the item burned. KRS 513.040. In the present case, a chemical accelerant was

placed in the floor of the car to assist the burning of the car. The argument that the resulting fire was unintended is preposterous. Furthermore, appellant's claims that the trial court erred in refusing to define reasonable doubt, and erred in its instructions on the prosecution's burden of proof and the presumption of innocence are likewise without merit. *Commonwealth v. Callahan*, Ky., 675 S.W.2d 391 (1984). In *Commonwealth v. Sanders*, Ky., 685 S.W.2d 557 (1985), we held that instructions given pursuant to RCr 9.56 meet constitutional muster. *See also Victor v. Nebraska*, —— U.S. ——, ——, 114 S.Ct. 1239, 1242–43, 127 L.Ed.2d 583, 590 (1994) (holding that definition of reasonable doubt is neither proscribed nor prohibited from definition by the Federal Constitution, only that the defendant be proved guilty beyond a reasonable doubt). As such we decline further discussion of this issue.

In his claim that the Constitution prohibits prosecution herein for both murder and arson on double jeopardy grounds, appellant asserts that the burning of Cannon's automobile was incidental to the murder and that any "arson" was merely the means by which the murder was committed. Under appellant's view, whenever a crime is committed by means of another crime, double jeopardy prohibits prosecution for both.

■■■■ Our double jeopardy analysis, as described in *Ingram v. Commonwealth*, Ky., 801 S.W.2d 321 (1990), uses a two-pronged test: first, is whether the act or transaction constitutes a violation of two distinct statutes, and second is whether the offenses arose from a single act or impulse with no compound consequences. *Id.* at 322–25. This test is based on *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). In the present case, appellant was found to have been involved in the planning and commission of two distinct criminal acts. The crime of first degree arson was committed when the automobile was intentionally set ablaze. The separate and distinct crime of murder was accomplished by the burning of the victim in the automobile. As such, there were two distinct acts and impulses involved and indisputably there were compound consequences. There was no double jeopardy violation in convicting appellant of both crimes.

Appellant also takes issue with what he views as a "triple use" of the first degree arson conviction. At issue is the use of arson as a substantive crime, its use as the means by which the crime of murder was committed, and its use as an aggravating circumstance in the death penalty phase. These contentions have been sufficiently addressed hereinabove and further comment is unnecessary. Equally without merit is the contention that the Commonwealth failed to present evidence in support of the arson aggravator during the sentencing phase. The arson evidence presented during the guilty phase was sufficient to satisfy all statutory requirements and show intentional burning.

■■■■ Appellant's claim that he was denied his right to a public trial is absurd and insulting. It is clear from the record that the trial court was responding to excessive traffic moving through the courtroom which was "interrupting the jury." Members of the public and press were allowed to witness the proceedings, and as such, there was no violation of appellant's right to a public trial in this case. KY. CONST. § 11; *Morris v. Commonwealth*, 306 Ky. 349, 208 S.W.2d 58, 59 (1948). Counsel should exercise greater discretion in selecting issues to be presented on appeal.

■■■■ Appellant also claims error in the court's exclusion of a juror for cause who expressed knowledge of the case and a strong reluctance against the death penalty. The juror acknowledged that he was aware of the sentences given Perdue's co-conspirators and stated "if [Perdue] is proven guilty beyond a reasonable doubt ... I don't know that I could agree with the death penalty." In *Ice v. Commonwealth*, Ky., 667 S.W.2d 671 (1984), we held that it was error to ask a prospective juror whether he could vote to impose the death penalty in the case to be tried. *Id.* at 676. In the present case, the excused juror expressed an unwillingness to impose the death penalty against appellant because of his knowledge that Sue Melton received only twenty years for her murder-

ous activities. As such, there was no error in the removal of this juror as he admitted that he could not consider the full range of sentencing possibilities. *See generally Stanford v. Commonwealth*, Ky., 734 S.W.2d 781, 787 (1987), *aff'd*, 492 U.S. 361, 109 S.Ct. 2969, 106 L.Ed.2d 306 (1989).

■ Jury selection for appellant's case was originally scheduled to begin on June 23, 1992. As the court began examination of 31 prospective jurors, it became apparent that twelve of those jurors worked at the same company and were scheduled to begin a vacation period in a few weeks. All twelve were excused from the pool by agreement of the parties, and after further questioning, two others were excused and the jury panel was exhausted. The trial court decided that the remaining seventeen jurors should be recalled with the new jury panel and that a jury would be chosen on July 7, 1992. At no time did appellant raise any objection to this procedure. On appeal, however, he cites a failure to follow the jury procedures of KRS 29A.070 and RCr 9.30(1)(c).

We have recently held that a new venire may be merged with an existing panel. *Copley v. Commonwealth*, Ky., 854 S.W.2d 748, 750 (1993); *see also Asher v. Commonwealth*, Ky.App., 614 S.W.2d 249 (1980). There was no substantial deviation from the statutes and rules sufficient to require reversal in this case. *Commonwealth v. Nelson*, Ky., 841 S.W.2d 628, 630 (1992).

■ Appellant next argues that the trial court erred when it failed to excuse three jurors for a variety of causes. First, he claims that a juror's relationship to a witness who was related to his first cousin mandates that the juror should have been stricken for cause, *sua sponte*. There was no objection by appellant. The juror stated that any such familial relationship would not affect his decision of the case. As such a determination is within the sound discretion of the trial court, there was no error. *See, e.g., Thomas v. Commonwealth*, Ky., 864 S.W.2d 252 (1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1218, 127 L.Ed.2d 564 (1994).

■ Error is also claimed in failure to remove a juror whose brother was a neigh-bor to co-indictee Sue Melton. This juror stated that she had not formed an opinion about the case and appellant did not express any objection nor ask her any questions. We cannot consider it error for the trial court to decline to step in and strike this juror for cause when she expressed no bias. *See Derossett v. Commonwealth*, Ky., 867 S.W.2d 195, 197 (1993). Appellant also contends that a different juror expressed an inability to presume innocence and should have been excused. In the record, however, defense counsel questioned this juror extensively and made no challenge for cause. Apparently, appellant was satisfied with the answers he received to his questions during voir dire and should not be heard to complain now on appeal. The answers given by this juror show that she afforded the defendant the presumption of innocence, and there was no error by the trial court. *Thomas v. Commonwealth*, Ky., 864 S.W.2d 252, 256 (1993).

■ Error is also alleged in the trial court's refusal to grant appellant's request for additional peremptory challenges, in excess of the ten awarded each side in this case. Although we held in *Brewster v. Commonwealth*, Ky., 568 S.W.2d 232 (1978), that trial courts have the power to grant additional peremptory challenges, it is in the discretion of the trial court when considering the facts of a particular case. *Id.* at 236. While the court might have granted appellant more challenges, RCr 9.40 does not require it and any determination on this matter is best left to the sound discretion of the trial court. *Smith v. Commonwealth*, Ky., 734 S.W.2d 437, 445 (1987), *cert. denied*, 484 U.S. 1036, 108 S.Ct. 762, 98 L.Ed.2d 778 (1988).

In addition to the foregoing, appellant asserts that cumulative errors should mandate reversal of his conviction. Our review of the entire case reveals that appellant received a fundamentally fair trial, and that there is no cumulative effect of error that would mandate reversal. *See Funk v. Commonwealth*, Ky., 842 S.W.2d 476 (1992).

■ By means of a supplemental brief, appellant claims error in the Commonwealth's failure to provide the results or reports of any physical or mental examinations

of Sue Melton or Cynthia Moore. This argument stems from *Eldred v. Commonwealth*, 91–SC–678–MR, 906 S.W.2d 694 (Ky. October 27, 1994), which held the trial court's refusal to allow specifically requested discovery of these items, which limited proper cross-examination, to be reversible error.

The present case is distinct from *Eldred* in that preservation was not at issue there. In *Eldred*, defense counsel's motion for discovery of these records was overruled. In the present case, however, the record is without any reference to such a request, and cross-examination on such matters was without the boundaries placed upon counsel in *Eldred*. Contained in this record are several instances which demonstrate appellant's familiarity with and reference to the *Eldred* record. Appellant makes no claim that he ever requested the records of Melton and Moore, nor that his defense was prejudiced by his supposed inability to obtain them. There was both a different judge and prosecutor at appellant's trial, and we can find no error committed by the trial court on this issue.

## II. PENALTY

▉ As a feature of his claims of prosecutorial misconduct, appellant asserts that there were improper statements during the penalty phase concerning other "murder for hire" activities by him sufficient to require reversal. Although defense counsel objected, and the trial court admonished the jury, we consider the conduct of the Commonwealth at this critical point to be of such a character as to require reversal. In particular, the Commonwealth asked when appellant had gotten into the murder for hire business. The judge, indicating frustration with the Commonwealth, stated, "[y]ou have got—Mr. Prosecutor ... you had a good case going there. But, you're about to blow the damn thing right out of the water."

The questions concerning appellant's engaging in the "murder-for-hire business" were inflammatory and prejudicial. Such statements were not based on evidence and served no purpose other than to unfairly prejudice the appellant. We need not consider whether such question, standing alone, would constitute reversible error, for in view of the other errors during the sentencing phase, reversal must follow.

▉ Appellant likewise contends that the Commonwealth's statements concerning parole eligibility were improper and erroneous, and that such error requires reversal. During closing argument in the penalty phase, the Commonwealth stated that

> any penalty that you impose on this man, whether it be 20 years, 50 years, 100 years, or life, he is going to be eligible for parole in 12 years. This man is going to be out on the streets—or could be back out on the streets in 12 years.... The time has come for this man to get the death penalty. If you give him anything less, he is going to be out on the street. Right here they are; 20 years, he is eligible for parole in four years. There it is. 39 years, he is eligible for parole in seven years and 10 months.

Initially we observe that the guidelines used by the Commonwealth were erroneous, and may well have prejudiced the jury's decision on the penalty imposed. However, under KRS 532.025, when the death penalty is sought, evidence of minimum parole eligibility guidelines may not be introduced at all. Although no objection was made, this error is too great to overlook. It may well be that the jury considered sentencing appellant to a term of years, but felt that only a death sentence would keep him off the street. This penalty phase error exemplifies yet another reason for reversal and re-sentencing. *See, infra*, discussion of *Francis v. Commonwealth*, Ky., 752 S.W.2d 309 (1988). *See generally, Ruppee v. Commonwealth*, Ky., 754 S.W.2d 852 (1988); *see also Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985).

▉ Further, during the penalty phase, the Commonwealth turned what was a matter of fact concerning appellant's decision to go to trial, *supra*, into an attack on his character because of his demand for a trial. During the penalty phase closing, the Commonwealth stated that, although Melton took her punishment, "[t]his man didn't do that. He didn't 'fess' up. He didn't come in here and tell you the truth." It is flatly improper

to refer to the "time and trouble" occasioned by a plea of not guilty and the resulting trial. *See Norton v. Commonwealth*, Ky., 471 S.W.2d 302, 306 (1971). This, in combination with other penalty phase errors, requires reversal.

At another point during the penalty phase closing argument, the Commonwealth stated that "people are sitting up there on death row that has [sic] been up there for 25 years." The implication appears to have been that a sentence of death would never be carried out and would result in a sentence of life in prison. There was no objection. We review this issue cognizant of the misstatements concerning parole eligibility, including the statement that with "anything less [than a death sentence], he is going to be out on the street." In view of all such sentencing information and misinformation, the jury may well have been uncertain as to the legal significance of a sentence of death, of life imprisonment, or of imprisonment for a term of years. Because of the implication that a sentence of death was something other than a death sentence, there was reversible error. *Sanborn v. Commonwealth*, Ky., 754 S.W.2d 534, 544 (1988); *Ice v. Commonwealth*, Ky., 667 S.W.2d 671, 676 (1984).

Appellant's remaining claims of prosecutorial misconduct during the sentencing phase have been reviewed and found to be unpreserved, insubstantial or harmless. Further comment on the points raised is not necessary.

Appellant also claims reversible error in the combining of the penalty phase hearing pursuant to KRS 532.025 and with the truth-in-sentencing hearing pursuant to KRS 532.055. In addition to the claimed violation of the statutes and our decision in *Francis v. Commonwealth*, Ky., 752 S.W.2d 309 (1988), appellant argues that the prosecutor used the possibility of parole as placed before the jury in the death penalty phase as an argument in favor of the death penalty.

> The time has come for this man to get the death penalty. If you give him anything less, he is going to be out on the street. Right here they are; 20 years, he is eligible for parole in four years. There it is.

39 years, he is eligible for parole in seven years and then months. I don't want this man back on the streets to kill again.... There is only one sentence and that is the death penalty.... If you don't given him that, he will be back out on the streets doing the same thing again.

The relevant statutes are KRS 532.025 which applies in a case where the death penalty may be imposed, and KRS 532.055 which applies to all felony cases. We have heretofore considered the relationship of these statutes and held in *Francis* that "in any case in which the death penalty is sought, the capital penalty sentencing phase pursuant to KRS 532.025 should be conducted before the truth-in-sentencing hearing under KRS 532.055(2)...." *Id.* at 311. In *Francis* the erroneous combination of the statutory penalty proceeding was held non-prejudicial because "a sentence of death was not imposed. Therefore, there was no prejudice and consequently no reversible error." *Id.* In the case at bar, however, the death penalty was imposed and by virtue of the combined sentencing phase and the prosecutor's argument concerning parole eligibility, prejudice was palpable. RCr 10.26. Without repeating an exhaustive analysis, it is sufficient to say that parole eligibility information which is fully admissible under KRS 532.055 has no place in a death penalty hearing pursuant to KRS 532.025. Under no circumstances should parole eligibility enter into death penalty deliberations. Appellant next claims reversible error by virtue of the disclosure that his 1977 conviction for four counts of manslaughter occurred as a result of the amendment of murder charges. During the penalty phase the circuit court clerk was called by the Commonwealth to testify as to appellant's prior criminal convictions. In the course of his testimony, the clerk stated that appellant had been convicted of "murder, four counts." In fact, appellant had been charged with four counts of murder arising out of a vehicular homicide but the charges had been amended and appellant had pled guilty to manslaughter in the second degree for which he was sentenced to seven

years on each count.[2]

■ When this error was brought to the attention of the trial court, and after appellant's motion for a mistrial had been overruled, the trial court admonished the jury to disregard the reference to murder. The court explained that the jury should consider only the conviction for manslaughter in the second degree and make no presumptions as to murder. The effect of the admonition was to inform the jury that appellant had been permitted to plea bargain four counts of murder into four convictions for manslaughter in the second degree.

It is difficult to conceive of information which would have been more prejudicial than that which came to the jury here. By that time, appellant had been convicted of what may be the most heinous of all crimes, murder for hire, and the jury which was about to fix his punishment was informed that he had been previously charged with four counts of murder but had escaped with second degree manslaughter. Inevitably, such information would lead the jury to conclude, notwithstanding the court's inartful admonition to disregard any reference to murder, that appellant had previously escaped just punishment and motivate it to see that it did not happen again. *See Alexander v. Commonwealth,* Ky., 450 S.W.2d 808, 810 (1970).

■ All of the foregoing was in keeping with the central theme of the prosecutor's summation, repeated entreaties to the jury to impose the death penalty to prevent appellant from killing again.[3] KRS 532.025(1)(b) provides that in a death penalty hearing before a jury, there shall be evidence of the defendant's "... record of any prior criminal convictions...." While we have not heretofore directly considered whether this opens the door to crimes charged in an indictment which were subsequently amended, the plain language of the statute and the possibility of prejudice discussed herein compel the conclusion that it does not. We have considered whether a prior conviction which is not final by virtue of the pendency of appellate review may be introduced. In *Thompson v. Commonwealth,* Ky., 862 S.W.2d 871 (1993), we answered no and stated

> It has long been held by Kentucky courts that a "conviction, which of course means the final judgment" cannot be relied upon as a conviction if an appeal is being taken because "an appeal in a criminal case suspends the judgment, and this does not become final until a termination of the appeal."

*Id.* at 877 (quoting *Foure v. Commonwealth,* 214 Ky. 620, 283 S.W. 958, 962 (1926)). *Thompson* is in accord with *Melson v. Commonwealth,* Ky., 772 S.W.2d 631 (1989), which held that a prior conviction cannot be utilized for purposes of truth-in-sentencing or persistent felony offender if an appeal is pending. *Id.* at 633. A similar rule would logically follow with respect to amended charges.

We need not consider whether a proper admonition here would have been sufficient to cure a fleeting reference to the original charges, for what happened was neither. That such information was before the jury at the most critical phase of the trial is sufficient to destroy our confidence in the reliability of the jury verdict.

Appellant next claims that by virtue of the charges against him and from the evidence presented, he was not within a "death-eligible class" precluding imposition of the death penalty. He demands reversal and remand with the limitation that no punishment greater than life imprisonment may be imposed.

Appellant's central contention in this regard is that as his criminal responsibility was

---

**2.** Manslaughter in the second degree is a Class C felony and wantonness is the required mental state. The statute specifically includes wantonly causing the death of another person by operation of a motor vehicle. KRS 507.040.

**3.** A representative sample of the prosecutor's summation is as follows:
> I don't want this man back on the street.... The time has come for this man to get the

death penalty. If you give him anything less, he is going to be out on the street.... I don't want this man back on the streets to kill again. He has killed enough. The time has come for him to be given the death penalty. There is only one sentence and that is the death penalty.... That is the sentence to give this man. If you don't give him that, he will be back out on the streets doing the same thing again.

based solely upon complicity and since he did not personally participate in the murder nor was he at the murder scene, the death penalty is constitutionally forbidden. He relies extensively upon *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), which holds that despite participation in a robbery, one who did not kill, attempt to kill, intend to kill, or contemplate that life would be taken is protected from a death sentence by the Eighth and Fourteenth Amendments to the Constitution of the United States. Appellant acknowledges refinement or modification of the *Enmund* rule in *Tison v. Arizona,* 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987), where the Court held that

> reckless disregard for human life implicit in knowingly engaging in criminal activities known to carry a grave risk of death represents a highly culpable mental state, a mental state that may be taken into account in making a capital sentencing judgment when that conduct causes its natural, though also not inevitable, lethal result.

*Tison,* 481 U.S. at 157–158, 107 S.Ct. at 1688.

■ This Court has interpreted the foregoing decisions to permit imposition of a death penalty upon a non-trigger man if his participation in the murder is such as to render the death penalty appropriate. *Stanford v. Commonwealth,* Ky., 854 S.W.2d 742, 744 (1993). There was evidence from which the jury could have believed that appellant was a broker or go-between in arranging the murder of Herbert Cannon. Prior to the murder a telephone call was placed to appellant in circumstances from which the jury could have inferred that it was to arrange the murder. Although neither Sue Melton nor appellant acknowledge an acquaintance with one another prior to the murder, a witness testified to having seen appellant coming and going from Sue Melton's apartment a few weeks prior to the murder. After Cannon's death, there was evidence of appellant's admission of participation and his attempt to collect money for his role in the crime. We discern no significance in the fact that the more persuasive evidence against appellant arose out of his statements and conduct after the crime. There is no rule of law which

segregates evidence of guilt between that which occurs before and after occurrence of the crime. In sum, there was ample evidence from which the jury could have believed and clearly did believe that appellant had "major participation in the felony committed." *Tison,* 481 U.S. at 158, 107 S.Ct. at 1688.

■ A number of decisions from the Supreme Court of the United States and from this and other state courts have struggled to define the extent of moral culpability required to render one constitutionally eligible for the death penalty. *See, e.g., Tison v. Arizona,* 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987); *Cabana v. Bullock,* 474 U.S. 376, 106 S.Ct. 689, 88 L.Ed.2d 704 (1986); *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982); *Skillern v. Estelle,* 720 F.2d 839 (1983); *Stanford v. Commonwealth,* Ky., 854 S.W.2d 742 (1993). The dilemma arises in circumstances where the victim's death is merely possible or probable and the inquiry is whether the conduct of an accomplice is attended by sufficient *mens rea* to permit imposition of the death penalty. But this is not a case in which the dilemma even arises. Even though appellant was not at the scene and even though, in the words of the trial judge, "he did not light the match," he was nevertheless a moving force behind the murder. It was appellant who arranged the murderous bargain between Melton and Eldred and Ploetner. There is no debate about whether murder was probable or merely possible, for the only purpose of the criminal enterprise was murder. We can conceive of no greater crime nor one more deserving of capital punishment than bargaining the death of another human being. As such, there is no constitutional prohibition against the death penalty. *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982).

Appellant continues his attempt to diminish his own culpability by arguing that imposition of a death sentence under these facts is disproportionate in violation of KRS 532.075(2). He disingenuously argues that "there was a total absence of any evidence suggesting that he intended Cannon's death." His counsel also attacks this Court's method-

ology of proportionality review by contemptuously referring to an appendix to the brief with the comment "should this Court decide to do a real inquiry into proportionality." In this case we will not pursue the question of contempt.

■■■ Appellant makes much of intra-case disparity of punishment. In particular, he points to the conduct of Sue Melton and her resulting guilty plea and sentence of two ten-year terms of incarceration. In *Standefer v. United States*, 447 U.S. 10, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980), the Court held that one accused of aiding and abetting in the commission of an offense may be convicted after the principal has been acquitted of that offense. *Standefer*, 447 U.S. at 19, 100 S.Ct. at 2005. In so doing, the Court recognized that in criminal cases, evidence which is admissible against one may be inadmissible against another charged with the same offense. *Standefer*, 447 U.S. at 23–24, 100 S.Ct. at 2008. The Court expressed the view that criminal responsibility should be assessed without regard to the fate of other participants in the crime. *Standefer*, 447 U.S. at 25–26, 100 S.Ct. at 2009. Appellant's suggestion that he has been punished for rejecting the prosecutor's plea offer and electing to go to trial is preposterous. The very essence of a plea offer is a diminution of what would potentially be greater punishment. When a defendant rejects a plea offer believing it to be in his best interest to stand trial, the prosecutor's election to seek a penalty within the range provided by law does not amount to vindictiveness.

■■■ Appellant further contends that the use of two remote felonies during the sentencing phase was reversible error. During the sentencing phase, the Commonwealth introduced a nineteen year old conviction for burglary and four fifteen year old convictions for second degree manslaughter arising out of a single car, drunk driving, accident. The convictions were not permitted to be used for impeachment during the guilt phase of the trial in accord with KRE 609(b). While prior convictions over ten years old are not admissible to impeach credibility, as being too remote in time, such convictions are admissible at sentencing. KRS 532.025(1)(b) allows the

introduction of "any prior criminal conviction," and we held in *Grenke v. Commonwealth*, Ky., 796 S.W.2d 858 (1990), "[t]he temporal remoteness of a prior conviction affects its evidential weight (as the defendant may point out in mitigation)." *Id.* at 859. Appellant's prior convictions were proper for consideration at the sentencing phase in the present case, and the remoteness went only to weight, not to admissibility. Our evidentiary rule, KRE 609(b), does not allow introduction of remote prior convictions to impeach credibility during the guilt phase, as a jury might associate prior guilt with current guilt. In the present case, however, appellant had already been found guilty of complicity to murder. Prior convictions are relevant for sentencing, and there was no error in this regard. Care must be taken in the introduction of appellant's prior manslaughter convictions, however, so that prejudice will not accompany their introduction. *See also Francis v. Commonwealth*, Ky., 752 S.W.2d 309 (1988), and discussion, *supra.*

KRS 532.025(1)(a) requires the Commonwealth to provide the accused with notice of what "evidence in aggravation" will be used in seeking the death penalty. In the present case, appellant was put on notice that the Commonwealth would attempt to prove both murder for profit as well as murder committed by arson. The indictment gave appellant this notice. Easily distinguishable are the cases of *Lankford v. Idaho*, 500 U.S. 110, 111 S.Ct. 1723, 114 L.Ed.2d 173 (1991), where the prosecution denied that the death penalty would be sought but was then imposed by the trial court and *Smith v. Commonwealth*, Ky., 845 S.W.2d 534 (1993), where the Commonwealth was not clear in its intentions to seek the death penalty until a few days before trial. In the present case, appellant was made fully aware, at all stages of the proceedings, that the death penalty would be sought. There was no element of surprise and the first objection to any lack of notice came on appeal to this Court. As such, there was no error.

■■■ Appellant also alleges a double jeopardy violation in the submission to the jury as an aggravating circumstance the fact that the murder was committed by arson. The

jury found that the murder of Cannon was committed during the course of first degree arson, and that the murder was committed for profit. Use of a separate crime as a statutory aggravator is not prohibited by double jeopardy principles. However, even if the aggravating circumstance of murder by first degree arson were removed from the equation, appellant's death sentence for murder could continue to stand, well grounded in the jury's separate verdict that the murder was committed for profit. There was no double jeopardy violation.

 Appellant contends that the verdict form provided to the jury by the trial court forced the jury to fix a sentence of life without parole for twenty-five years or death if an aggravating circumstance was found. Given our remand of this case, we need not decide whether the verdict form issue mandates reversal in the absence of contemporaneous objection. We note that it has long been held that the finding of an aggravating circumstance should serve only to place a defendant into the class eligible for one of the harshest sentences, but must not suggest that the latter follows automatically. *See* *Sanborn v. Commonwealth*, Ky., 754 S.W.2d 534, 545 (1988). Verdict forms must be carefully drafted to insure that a jury will not feel obligated to fix a specific punishment if an aggravator is found. Even if the jury determines that an aggravating circumstance is present, the verdict form must make it clear that the full range of punishments are available for imposition.

Appellant also contends that the trial court's explanation of the required unanimity of verdict resulted in the jury believing that any findings of mitigation must also be unanimous. This issue is not preserved. In support of this proposition, appellant cites several cases where the jury was instructed that unanimous agreement on particular mitigating factors was required. *See, e.g., Mills v. Maryland*, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988); *Kubat v. Thieret*, 867 F.2d 351, 373 (7th Cir.), *cert. denied*, 493 U.S. 874, 110 S.Ct. 206, 107 L.Ed.2d 159 (1989). The record here does not reflect the requirement of unanimity in a finding of mitigation. There is not a "reasonable likelihood that the jury has applied the challenged instruction in a way that prevents consideration of constitutionally relevant evidence." *Boyde v. California*, 494 U.S. 370, 380, 110 S.Ct. 1190, 1198, 108 L.Ed.2d 316 (1990). Because unanimity of a finding of mitigation was not required, this issue is without merit.

 As a companion issue, appellant makes a seven part argument as to error in the penalty phase instructions. As with so many other issues raised on appeal, this issue was not presented in the trial court. Appellant asserts that the sentencing instructions did not allow the jury to fix a sentence of life imprisonment. On the contrary, the instructions clearly state that "[i]f upon the whole case you have a reasonable doubt whether the defendant should be sentenced to death, you shall fix his punishment at a sentence of life imprisonment." We upheld a similar instruction in *Smith v. Commonwealth*, Ky., 599 S.W.2d 900, 911 (1980). The instructions provided the jury with the option of sentencing appellant to life imprisonment, and as such, there was no error. *See Skaggs v. Commonwealth*, Ky., 803 S.W.2d 573, 575 (1990), *cert. denied*, 502 U.S. 844, 112 S.Ct. 140, 116 L.Ed.2d 106 (1991).

 As a closing to his brief, appellant advances several arguments against the Kentucky death penalty, all of which are without merit. Its application cannot be considered arbitrary in view of the guidelines for its imposition as provided by KRS 532.035 and 532.075. As the United States Supreme Court has noted, juries consider individual defendants and individual cases when fixing a death sentence, and such statistical correlation of evidence is insufficient to invalidate a jury's specific finding. *McCleskey v. Kemp*, 481 U.S. 279, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987). Furthermore, death by electrocution is not cruel and unusual punishment. *Sanders v. Commonwealth*, Ky., 801 S.W.2d 665, 683 (1991). Appellant's argument that he was unfairly prohibited from this Court's compilation of data with regard to a proportionality review, pursuant to KRS 532.075(6), is without merit as all cases utilized in the review are published opinions. *See, e.g., Sanders v. Commonwealth*, Ky., 801 S.W.2d 665, 683 (1991). The death penalty statute,

as written in this Commonwealth, provides sufficient "standards to guide the jury in its inevitable exercise of the power to determine [who] shall die." *Woodson v. North Carolina*, 428 U.S. 280, 303, 96 S.Ct. 2978, 2990, 49 L.Ed.2d 944 (1976). Its existence and imposition in this case does not violate the constitutional rights of appellant.

In view of our determination that appellant's death sentence must be vacated and this cause remanded to the trial court for a new sentencing proceeding, it would be premature to make a final determination as to death penalty proportionality. At this juncture, we cannot say with certainty what aggravating and mitigating factors will be presented upon sentencing retrial, or otherwise properly take account of the requirements of the proportionality review statute and decisions. KRS 532.075. We can say, however, that nothing in this record would appear to preclude the Commonwealth from again seeking the death penalty.

 Appellant states that the trial court erred in failing to instruct the jury that a sentence of death would result in the electrocution of the appellant. Such an instruction is not required by law and its omission cannot be considered error. A jury selecting death as a sentence must be presumed to know that death will be the result of that sentence. A description of the intricate particulars of the workings of electrocution are not required, only that the jury weigh the importance of sending a criminal defendant to his death. There was no error. The trial court also committed no error in failing to instruct the jury to avoid passion or prejudice in fixing the death penalty. While such an instruction is permissible, an examination of these factors should be made by the trial court reviewing a death sentence. *See California v. Brown*, 479 U.S. 538, 107 S.Ct. 837, 93 L.Ed.2d 934 (1987). No instruction was required.

 The contention that the trial court limited the jury's consideration to sentencing phase evidence is also without merit. The court instructed the jury to "consider such mitigating or extenuating facts and circumstances as have been presented to you in the evidence ... any other circumstance or circumstances arising from the evidence." At no time was the jury instructed to disregard evidence of mitigation presented during the guilt phase of the trial, and there was no error. *See Smith v. Commonwealth*, Ky., 845 S.W.2d 534, 539 (1993). Nor was there error in the jury's failure to make specific findings of mitigation. *Sanders v. Commonwealth*, Ky., 801 S.W.2d 665, 681 (1991). Error was also not present in the trial court's instruction on the role of mitigating circumstances. Under KRS 532.025, a jury is not required to weigh mitigating factors against aggravating factors. *Id.* at 683. Finally, there was no error in the instructions' failure to state, specifically, that appellant was a "non-trigger man." The instructions made it clear that the jury could consider appellant's actual role in the crime. Consideration of appellant's youth was not a required instruction, nor were any other factors requested now on appeal. As this issue is unpreserved, we can find no error in the instructions.

Appellant points out that the requirements of KRS 532.035(1)(a) were not followed, in that the order of closing argument at the sentencing phase was reversed from that dictated by the statute. We need not consider whether this alone would require reversal, but state that future sentencing phase hearings should be conducted in accordance with the statute which requires the prosecution to open and the defendant to close the arguments.

 Appellant also contends that the trial court refused to consider evidence in mitigation when imposing the death sentence. The record shows that the trial court followed its duties when considering mitigation, and that it considered all such mitigating evidence before imposing the death sentence. The trial court correctly considered appellant's role in the murder of Herbert Cannon. Appellant's desire that the court view his role as that of only a "middle-man" did not preclude the court from viewing appellant's role as an instigator of the murder. Furthermore, the trial court was allowed to consider non-statutory aggravating factors, such as the circumstances of the crime and the death of the victim. *See Bevins v. Commonwealth*,

Ky., 712 S.W.2d 932 (1986), *cert. denied,* 479 U.S. 1070, 107 S.Ct. 963, 93 L.Ed.2d 1010 (1987). Nor was the trial court required to make specific findings of mitigating factors. *Sanders v. Commonwealth,* Ky., 801 S.W.2d 665, 681 (1991). Finally, the trial court was within its proper discretion in upholding the jury's sentence of death. The contention that there is no properly articulated standard of review for the trial court in such a circumstance is without merit.

Also contended is that there is sufficient reasonable doubt in appellant's case to serve as a mitigating factor prohibiting the imposition of the death sentence. Citing *Heiney v. Florida,* 469 U.S. 920, 921–22, 105 S.Ct. 303, 304, 83 L.Ed.2d 237 (1984) (Brennan & Marshall, JJ., dissenting from denial of cert.). Whatever the legal standard in the present case, both the trial court and the jury made sufficient findings upon which a death sentence might rest. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). There was no error.

## CONCLUSION

In this opinion we have reviewed each of the forty-one issues presented by appellant and concluded that during the guilt phase, there was no error of sufficient gravity to warrant reversal of appellant's convictions. In other words, as to this conviction, there were no errors which we believe to be inconsistent with substantial justice or which affect appellant's substantial rights. RCr 9.24. As such, we affirm the trial court's judgment upon a jury verdict whereby appellant was determined to be guilty of the crimes of complicity to murder and complicity to commit arson.

With respect to the sentencing phase of appellant's trial, we have encountered error which cannot be disregarded as harmless and which is inimical to reliable capital sentencing. *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); *Woodson v. North Carolina,* 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976). These sentencing phase errors are discussed in the later part of the opinion, and generally involve egregious argument, misstatement of law and fact, and the highly improper combining of the death penalty and truth-in-sentencing proceedings in violation of *Francis v. Commonwealth,* Ky., 752 S.W.2d 309 (1988). As such, and as explained herein, it is necessary to reverse this case for a new penalty phase proceeding. Therefore, appellant's convictions for complicity to murder and complicity to commit arson are affirmed, but his sentences are vacated and this cause remanded to the trial court for further consistent proceedings. *Boone v. Commonwealth,* Ky., 821 S.W.2d 813 (1992); *Williamson v. Commonwealth,* Ky., 767 S.W.2d 323 (1989).

As to Part I, the guilt phase, STEPHENS, C.J., and FUQUA, LAMBERT, REYNOLDS and WINTERSHEIMER, JJ., concur. As to Part II, the penalty phase, STEPHENS, C.J., and LAMBERT, LEIBSON, REYNOLDS, and STUMBO, JJ., concur. LEIBSON, J., files a separate opinion concurring in part and dissenting in part, in which STUMBO, J., joins. WINTERSHEIMER, J., files a separate opinion concurring in part and dissenting in part, in which FUQUA, J., joins.

LEIBSON, Justice, concurring in part, dissenting in part.

Respectfully, I dissent from that portion of the Majority Opinion affirming Perdue's convictions for complicity to murder and complicity to first-degree arson.

There was sufficient evidence to prove that Perdue was contacted to find a killer, that he supplied a killer, and that he came back after the crime to demand payment of a finders fee plus the killer's pay from Sue Melton, Herbert Cannon's ex-wife. There was also sufficient evidence to place Perdue in the death eligible class because it was murder for profit. KRS 532.025(2)(a)(4).

However, there was *insufficient* evidence to allow the jury to find Perdue guilty of complicity to commit first-degree arson in the guilt phase, or to submit arson to the jury as an aggravating factor in the penalty phase. The guilt phase complicity to commit first-degree arson instruction stated the jury would find Perdue guilty if the jury believed

beyond a reasonable doubt all of the following[1]:

(a) That ... Perdue aided and assisted codefendants ... in committing the offense of Arson in the first degree by destroying an automobile owned by Herbert Cannon by fire, by procuring the services of Frank Eldred in setting the fire, by facilitating the payment for said services, if any, **by planning the commission and the offense of arson in the first degree and by standing in immediate readiness to come to the aid and assistance of his codefendants in carrying out the arson, if any;**

(b) That one or more of the ... co-conspirators started the fire intentionally;

(c) That in so aiding and assisting the ... codefendants, **it was his intent to damage or destroy the automobile owned by Herbert Cannon;** AND

(d) At the time any one or more of the co-conspirators set the fire, the automobile was occupied, or the defendant had reason to believe the automobile might be occupied.

There was no proof Perdue conspired ahead of time to arrange how the killing would be carried out. Although he may have planned the murder of Cannon, there is no substantial evidence he had any knowledge of the method to be used beforehand, or that he participated in any of the planning leading up to the killing except to link up Eldred with Melton. Thus, there was no evidence from which the jury could determine it was Perdue's intent to damage or destroy Cannon's automobile, nor was there any evidence from which the jury could find he planned the commission and the offense **of arson.** Since even the Commonwealth admitted Perdue was not present the night of the killing, how he could have been "standing in immediate readiness to come to the aid and assistance of his codefendants in carrying out the arson," is a mystery.

Thus, I would reverse because there was insufficient evidence to support the jury's verdict of guilty of complicity to commit first-degree arson. Likewise, there was insufficient evidence to submit arson as an aggrava-

tor during the penalty phase. Because I believe the evidence was insufficient to find Perdue guilty of complicity to arson, I would not reach the issue of whether Perdue's prosecution for both murder and arson constituted double jeopardy.

In a taped conversation between Perdue and Cynthia Moore, Moore pretended she wanted Perdue's advice and assistance with the murder of her husband. Moore indicated that she knew all about Cannon's murder and Eldred's and Perdue's involvement in it. Moore repeated several statements which she attributed to Eldred, who was not present during the conversation. Although the Commonwealth's theory was that the conversation with Moore was about the murder of Cannon, Herbert Cannon's name was never mentioned on the tape, nor was his murder. This tape-recorded conversation should have been excluded from Perdue's case as irrelevant because it did not prove complicity to murder.

During the conversation, Perdue said several times that "it got done," the Commonwealth's theory being that the "it" referred to was Cannon's murder. At one point, Perdue stated "we got it done," but, in context and under the Commonwealth's theory, the statement was no more than proof after the fact that a murder had been accomplished. During closing argument, the prosecutor made several references to the tape, prejudicially misquoting Perdue as saying "I got it done." This misstatement of the evidence turned the conversation into a confession by Perdue and was reversible error.

STUMBO, J., joins.

WINTERSHEIMER, Justice, concurring in part, dissenting in part.

I concur with so much of the majority opinion that affirms the judgment of guilt of the crimes of complicity to murder and complicity to arson. I dissent from that part of the majority opinion which reverses for alleged sentencing errors in the penalty phase.

Any consideration on appeal of alleged prosecutorial misconduct must focus on the

---

1. I have highlighted the pertinent portions.

overall fairness of the entire trial. *Dean v. Commonwealth*, Ky., 844 S.W.2d 417 (1993); *Slaughter v. Commonwealth*, Ky., 744 S.W.2d 407 (1987). The most damaging meaning must not be given to an ambiguous remark. *United States v. Young*, 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985); *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). Attorneys are given wide latitude during opening statement and closing argument. *Lynem v. Commonwealth*, Ky., 565 S.W.2d 141 (1978). In order to justify reversal, the misconduct of the prosecutor must be so serious as to render the entire trial fundamentally unfair. *Summitt v. Bordenkircher*, 608 F.2d 247 (6th Cir.1979). The comments by the prosecutor in this case were not so pervasive or prejudicial as to deny the defendant due process of law. Consequently, reversal is not required.

An exhaustive review of the voluminous material involved in this appeal indicates that the conduct of the prosecutor in the guilt or penalty phases of the proceeding did not deprive Perdue of a fundamentally fair trial. The comments of the prosecutor throughout the entire trial, albeit harsh, were based on the evidence presented at trial. When the trial judge was requested to do so by the defense, an admonition to the jury to disregard any improper comments was given. Such an admonition to disregard improper statements is ordinarily sufficient to cure any improper comments. *See Greer v. Miller*, 483 U.S. 756, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987); *Alexander v. Commonwealth*, Ky., 862 S.W.2d 856, 858 (1993). Not every improper argument by a prosecutor is sufficient to require a new trial or establish a due process violation. *Donnelly v. DeChristoforo, supra.* The United States Supreme Court has indicated that it is "the duty of a reviewing court to consider the trial record as a whole and to ignore errors that are harmless, including most constitutional violations." *United States v. Hasting*, 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983).

There were no objections to the closing of the prosecutor during either the guilt or penalty phases of the proceedings. During the penalty phase of the trial, the Commonwealth introduced evidence that Perdue had previously been convicted of four counts of second-degree manslaughter pursuant to a plea of guilty. The trial judge properly admonished the jury that the fact that the charges were amended downward from murder was not to be considered by them because there was apparently no evidence to sustain a murder conviction. The prosecutor had sufficient latitude to ask the defendant questions during the penalty phase because the jury had already found Perdue guilty and the questions propounded were not sufficient to erode the reliability of the jury verdict.

The transcript of the tape recorded statement between Perdue and Cynthia Moore indicates that when she asked him how to burn a car, he informed her "there is a million ways to do that." Perdue was charged with murder by arson of a motor vehicle and with arson of a motor vehicle. Under the circumstances, the prosecutor was entitled to question the defendant regarding his knowledge of how to burn a vehicle. I do not believe such a question could be the basis for a reversal.

I can accept much of the rationale of the majority opinion in regard to its analysis of double jeopardy in this case. The majority correctly observes that the act of burning resulting in the destruction of the automobile and the murder of an individual clearly satisfies even the relaxed standard of double jeopardy as promulgated in *Ingram v. Commonwealth*, Ky., 801 S.W.2d 321 (1990).

It has long been held in Kentucky that there can be different parts of a continuing criminal transaction which are separate offenses and may be separately prosecuted. The concept that a single criminal action cannot be split into separate offenses is not necessarily applicable if different parts of a continuous criminal transaction or a series of acts are separate offenses and can be separately proved. *Newton v. Commonwealth*, 198 Ky. 707, 249 S.W. 1017 (1923). I believe Kentucky should return to the reasoning of *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) and the standard set out in *Wilson v. Commonwealth*, Ky., 695 S.W.2d 854 (1985) and *Polk v. Commonwealth*, Ky., 679 S.W.2d 231 (1984). See my dissent in *Ingram*.

I believe the judgment of conviction should be affirmed in all respects.

FUQUA, J., joins in this dissent.